**UNITED STATES of America**
v.
**James BROWN, a/k/a James Federico and James J. Philips, Defendants.**
**No. 74 Cr. 867(MP).**

United States District Court,
S. D. New York.
Feb. 24, 1975.

Paul J. Curran, U.S. Atty., S.D. New York by Edward J. Levitt, Asst. U.S. Atty., for plaintiff.

James F. McArdle, Jamaica, for defendant Brown.

Neal Hurwitz, Francis J. Purcell, New York City, for defendant Philips.

## OPINION

POLLACK, District Judge.

This prosecution charges defendants with crimes under the counterfeiting statutes and conspiracy to violate the same. 18 U.S.C. §§ 472, 473, 474, and 371. The attorney who presented the case to the Grand Jury was Edward J. Levitt, a special attorney with the Organized Crime and Racketeering Section of the Criminal Division, United States Department of Justice (the "Strike Force").

Defendants James Philips and James Brown joined in a motion pursuant to Fed.R.Crim.P. 12(b)(2) prior to trial to dismiss the indictment against them on the basis of the decision of Judge Werker in United States v. Crispino, 392 F. Supp. 764 (S.D.N.Y.1975). It was there held that the Special Strike Force created with the advent of the Justice Department's assault on organized crime was not authorized to appear before the Grand Jury in that case because the appointed assistant prosecutor was not in terms told that he could appear before the Grand Jury which functioned on the indictment therein.

In this case Mr. Levitt stated for the record that the commission authorizing him to prosecute crime in this District was identical to that considered by Judge Werker in *Crispino*. After denial of his motion to dismiss the indictment, the defendant Philips pleaded guilty reserving his rights to raise on appeal the question raised in *Crispino*.

The relevant statute in question here is 28 U.S.C. § 515(a), which reads as follows:

The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct,

. . .

It is conceded herein as Judge Werker also found in *Crispino* that the Attorney General was empowered to designate an assistant to extend the authorization to the Strike Force attorney and that Mr. Petersen, Assistant Attorney General, was so designated and in turn commissioned the prosecutor, a member of the Strike Force staff, to undertake any kind of grand jury proceedings in any kind of legal proceedings which United States Attorneys are authorized to conduct.

Here, Prosecutor Levitt was, by his commission letter

authorized and directed to file informations and to conduct in the [Southern] District [of New York] and any other judicial Districts of the United States any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

Clearly, therefore, in express terms Mr. Levitt was specifically authorized and directed to conduct the kind of grand jury proceedings that led to the indictment here. He was authorized for "any kind" of prosecution which a regular United States Attorney could conduct before any Grand Jury. This is not a case where the prosecutor has been authorized and directed to prosecute only one type of case or to proceed only against a particular defendant or to perform only one particular function and where nonetheless he has overstepped such limited and special authority. *Compare*, United States v. Hall, 145 F.2d 781 (9th Cir. 1944), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945).

As the legislative history indicates, the Congress in enacting the statute

which has now become § 515(a) was attempting to expand the authority of the Attorney General to comprehensively and effectively combat crime. The background for the enactment was that in 1903, the Circuit Court for the Southern District of New York had held that neither the Attorney General nor his assistants were authorized by law to appear before grand juries as prosecutors. United States v. Rosenthal, 121 F. 862 (C.C.S.D.N.Y.1903). In direct response to this decision, Congress passed the statute here in question, making it clear that the Attorney General and those under his direction were empowered to conduct any criminal or civil proceedings which United States Attorneys were authorized to conduct. H.R.Rep. No. 2901, 59th Cong., 1st Sess. (1906).

While much has been made of the congressional intent said to be illustrated by the inclusion of the phrase that the Attorney General's deputy be *"specifically directed"* to conduct legal proceedings, it is clear that in the upper house at least the requirement was not given much consideration. The Senate version of the bill, S. 2969, did not contain the word "specifically" at all. 40 Cong.Record 7013–14 (1906). This version was withdrawn by the Senate when the House passed its version and H.R. 17714 was passed by the Senate. 40 Cong.Record 9662 (1906). The fact that the statement of H.R. 17714 in the Congressional Record description of the Senate proceedings omits the word "specifically" also seems to indicate its relative unimportance in the legislation, at least from the Senate's viewpoint. 40 Cong. Record 9662 (1906).

At the time the statute was passed, special prosecutors apparently were appointed from time to time to prosecute specific crimes concerning which they had particular knowledge or competence. Questions inevitably arose as to whether these specially appointed prosecutors had, in bringing particular cases, overstepped the bounds of their limited commissions. *See, e. g.,* United States v. Powell, 81 F.Supp. 288 (E.D.Mo.1948);

United States v. Amazon Industrial Chemical Corp., 55 F.2d 254 (D.Md. 1931); United States v. Huston, 28 F.2d 451 (N.D.Ohio 1928); United States v. Morse, 292 F. 273 (S.D.N.Y.1922). There is no question here, however, that the prosecutor was authorized to conduct the instant proceedings, as the Attorney General, through his deputy Mr. Petersen, legally conferred upon Mr. Levitt the broad power to conduct "any kind of proceeding" before any grand jury that the United States Attorney can conduct.

An examination of the history and purposes of the strike forces reveals the reason why this broad grant of power and direction was considered necessary by the Department of Justice and why it is proper.

While the appointment of single special prosecutors, each commissioned *ad hoc* to focus on specific instances of crime, and each having a particular legal competence, may have been appropriate in the early years of this century, by the latter part of the 1960's, conditions had clearly changed. As the President said in a 1968 message to Congress, "It is clear that sporadic, isolated, uncoordinated attacks on the disciplined army of the underworld cannot obtain lasting results." "To Insure the Public Safety— Message from the President of the United States", (H.Doc. 250), 114 Cong.Record 2412 (Feb. 7, 1968).

The concept of "strike forces" of federal officers to deal with organized crime was first developed by Attorney General Ramsey Clark during the presidency of Lyndon Johnson, in response to a general feeling on the part of the Administration and the Congress that the federal government had been ineffective in fighting crime. *See, e. g.,* "Federal Effort Against Organized Crime: Report of Agency Operations", by the Legal and Monetary Affairs Subcommittee of the House Committee of Government Operations (House Rep. No. 1574, 90th Congress, 2d Session), reported in 114 Cong.Record 21014 (July 12, 1968) at 21015: "The Federal Government has not borne its obligation with the con-

stancy and force that its role in the overall battle against organized crime demands."

In a message to Congress not long after taking office, President Nixon informed the Congress that the strike forces already set up would be continued and new units would be initiated. In his speech of April 23, 1969, the President said that the strike forces were necessary

[t]o combine in one cohesive unit a cadre of experienced Federal investigators and prosecutors, to maintain a Federal presence in organized crime problem areas throughout the nation on a continuing basis . . .

These officers bring together, in cohesive single units, experienced prosecutors from the Justice Department, special agents of the F.B.I., investigators of the Bureau of Narcotics and Dangerous Drugs, the finest staff personnel from the Bureau of Customs, the Securities and Exchange Commission, the Internal Revenue Service, the Post Office, the Secret Service, and other Federal Officers with expertise in diverse areas of organized crime.

The President noted that "[t]o deal with the heavy concentration of criminal elements in the Nation's largest city", the Strike Force in the Southern District of New York would take the form of a special Federal-State Racket Squad, which would emphasize cooperation between federal and local authorities. "Organized Crime Message from the President of the United States" (H.Doc. No. 91–105), 115 Cong.Record 10041, 10042 (Apr. 23, 1969). This unit was actually set up in New York on July 7, 1969 and it is as a member of this unit that Mr. Levitt received his authorization and direction from the Attorney General.

The statutory requirement of a specifically directed authorization was apparently enacted in an atmosphere of the appointment of individual special prosecutors with particularized experience for particular cases. But this should not be and has not been interpreted as a requirement to thwart the comprehensive sweep of the statutory language, which was to facilitate the government's prosecutorial efforts when unleashed by the Attorney General to deal with rackets and organized crime through an elite corps of the government's prosecutors.

The issue raised here, in the context of a different atmosphere, was apparently first considered in this District in 1922, when Judge Augustus Hand decided United States v. Morse, 292 F. 273 (S.D.N.Y. 1922). There also a defendant had challenged the authority of a specially appointed prosecutor to appear before the Grand Jury which had indicted him. The appointment was a limited one—pertaining only to a particular situation—not as here for "any kind" of situation. One of the issues with which the Court in *Morse* was faced was "whether the designation as counsel which [the special prosecutor] received from the Attorney General was sufficiently specific". (At 275.) The prosecutor in that case had two commission letters, one of which mentioned three criminal statutes and stated the objects of the prosecution to be defendants related to specified corporations. The Court found the authorization to be sufficiently specific, noting that more specificity might deny the prosecutor "adequate power to deal with the situation without impairment of usefulness or unnecessary reduplication of labor." (At 276).

It is on exactly this point that this Court must disagree with the well-researched opinion of Judge Werker. The authorization here to the members of the Special Strike Force was without limitation—it was to prosecute "any kind of legal proceedings including Grand Jury proceedings". The commission was to meet the needs of modern law enforcement, to give the Strike Force prosecutor "adequate power to deal with the situation [any situation] without impairment of usefulness or unnecessary reduplication of labor."

Section 515(a) of Title 28 U.S.C. may properly be read not as a limitation but as a broad grant authorizing commissions as general as those in the letters questioned here. *Compare* Shushan v. United States, 117 F.2d 110 (5th Cir. 1941); In re Persico, 75 Civ. 96 (E.D. N.Y. Feb. 5, 1975); United States v. Sheffield Farms Co., 43 F.Supp. 1 (S.D. N.Y.1942).

The concerns expressed in *Crispino* on the subject of overly broad commissions do not seem to apply to Strike Force situations. The appointment of Strike Force attorneys was not intended to create a competition as between the regular local prosecutors and the members of the nationally organized strike force teams. Each serve a separate need and purpose. One does not supersede the other—they complement each other's function. The situations dealt with by the Strike Force cannot be equated with routine and essentially local situations.

Since the statute does not confine its application to particular facts or particular defendants, it would appear appropriate for the Courts to implement the public policies to be served through Strike Forces by upholding a broad grant of authority and to sustain a commission that directs members of the specially selected Strike Force to prosecute any kind of legal proceeding. Indeed to hold that such commissions are insufficiently specific would not serve any public purpose but might have mischievous and drastic effects as a precedent against the current needs of law enforcement across the country. No fundamental rights are at stake here that need be conserved in the constitutional interests of criminal targets. There is a strong public interest in implementing the broad purposes of the Congress and the executive by upholding the authority of the special prosecutors of the Strike Force.

This is not a case like United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), where the Justice Department had attempted to utilize improperly its authority to proceed with wire-tap surveillance—an intrusion on the right of privacy constitutionally safeguarded. The failure of the only accredited public official to personally assume responsibility and to properly authorize the wiretaps in *Giordano* was in disregard of clearly defined statutory mandates and frustrated a congressional policy legislated for the benefit of individuals.

In this case the congressional purpose was not to limit or hobble the pursuit of organized crime—rather the Congress and the executive intended to expand existing prosecutorial facilities and weapons. The specific authorization and direction intended was not by way of a limitation of but an extension of the government's ability to prosecute "any kind" of crime in "any kind" of legal proceeding.

As the Court stated in Haberman v. Finch, 418 F.2d 664, 666 (2d Cir. 1969):

> It is a familiar maxim of statutory interpretation that courts should enforce a statute in such a manner that its overriding purpose will be achieved, even if the words used leave room for a contrary interpretation.

Here the overriding purpose of 28 U.S. C. § 515(a) is to benefit and protect the public by expanding the prosecutorial capacity of the federal government, and that purpose would clearly not be served by an interpretation that would place unnecessary black-letter limitations on the attorneys of the "strike forces" in their prosecution of organized crime.

With respect, therefore, I cannot follow the path of my brother Werker on this issue. Defendants' motions to dismiss the indictment because a Strike Force representative proceeded against them before the Grand Jury are denied.

So ordered.