**In re Grand Jury Subpoenas Addressed to Raymond L. S. PATRIARCA et al.[*] Misc. Nos. 75-57 to 75-64, 75-69, 75-70, 75-83 to 75-86.**

United States District Court,
D. Rhode Island.

April 22, 1975.

---

[*] Broccoli, 75-58; Pizzo, 75-59; Fideas, 75-60; Shean, 75-61; Iafrate, 75-62; Parente, 75-63; Marrapese, 75-64; Caldarone, 75-69; Caldarone, 75-70; Rossi, 75-83; Calabro, 75-84; Scungio, 75-85; Aucone, Davis, Di Palma, Pandozzi & Policelli, 75-86.

S. Michael Levin, Sp. Atty., U. S. Dept. of Justice, Lincoln C. Almond, U. S. Atty., Providence, R. I., for plaintiff.

Harvey Brower, Boston, Mass., Harris L. Berson, Providence, R. I., for Raymond L. S. Patriarca.

John F. Cicilline, Providence, R. I., for Frank Marrapese, Albert Parente, Elaine Shean, Thomas Iafrate, Angelo Pizzo, Angelo Fideas, Stephen Broccoli, Frank Caldarone, Ronald Caldarone, Mario Rossi.

John R. Cosentino, Providence, R. I., for William Scungio.

Ronald A. Tutalo, Providence, R. I., for Carmelo Calabro.

John Tramonti, Jr., Providence, R. I., for Anthony Aucone, John C. Davis, Almerico John De Palma, Joseph Pandozzi, Jr., Vincent Policelli.

## OPINION

DAY, District Judge.

This matter is presently before the Court on motions to quash eighteen grand jury subpoenas [1] which were is-

---

1. Said grand jury subpoenas were addressed to, and served upon the following individuals:

| | |
|---|---|
| Raymond L. S. Patriarca | Ronald Caldarone |
| Stephen Broccoli | Mario Rossi |
| Angelo Pizzo | Carmelo Calabro |
| George Fideas | William Scungio |
| Elaine Shean | Anthony Aucone |
| Thomas Iafrate | John C. Davis |
| Albert Parente | Almerico John Di Palma |
| Frank Marrapese | Joseph Pandozzi, Jr. |
| Robert Caldarone | Vincent Policelli |

The subpoenas addressed to the Caldarones commanded their appearance before a federal grand jury sitting in Providence, Rhode Island on April 2, 1975 at 9:30 A.M. The subpoenas addressed to Messrs. Rossi, Scungio, Calabro, Aucone, Davis, Di Palma, Pandozzi and Policelli commanded their appearance before the aforementioned grand jury on April 10, 1975 at 9:30 A.M. Each of the remaining eight subpoenas directed its respective addressee to appear before said federal grand jury on March 26, 1975 at 9:30 A.M.

sued by the Clerk of this Court pursuant to applications filed on behalf of the United States of America by S. Michael Levin, a "special attorney", so-called, appointed and employed under the auspices of the United States Department of Justice.[2] The instant motions to quash essentially constitute a challenge to Mr. Levin's legal authority to apply for the issuance of the grand jury subpoenas in question.[3] Specifically, each of the eighteen movants has posited the following allegations in support of his respective motion to quash:

(1) Mr. Levin's commission as a special attorney should be considered null and void ab initio insofar as it was not executed by an appropriate government official authorized to make such an appointment.

(2) The procedures employed by the Department of Justice which culminated in Mr. Levin's appointment as a special attorney did not conform to the statutory requirements set forth in section 515(a) of Title 28 of the United States Code.[4]

(3) The purview of Mr. Levin's scope of authority, as it is designated in his letter of appointment, is such as to preclude and prohibit his participation, in any manner whatsoever, in grand jury investigations such as the one in the case at bar.

In addition to the aforementioned allegations directed at Mr. Levin's scope of authority, or lack thereof, the movants, with the sole exception of the movant Patriarca, have proffered the following somewhat less than substantive arguments in support of their instant motions to quash. Specifically, said movants contend that the subpoenas in question should be quashed insofar as—

1. Said subpoenas do not "entitle the proceeding".

2. Said subpoenas are addressed to potential target defendants.

The Government has, on behalf of Mr. Levin, denied the validity of each of the aforementiond claims and has, in addition, submitted the further argument that the movants have no standing to prosecute the instant motions.

2. Mr. Levin was purportedly appointed a "special attorney" with the Organized Crime and Racketeering Section of the Criminal Division, United States Department of Justice (hereinafter the "Strike Force"). Said appointment authorizing Mr. Levin—

" . . . to file informations and to conduct in the District of Rhode Island and in any other judicial district . . . any kind of legal proceeding . . ." (see letter of appointment of S. Michael Levin) affixed hereto as Exhibit A.

was made by Richard G. Kleindienst, Deputy Attorney General of the United States, on May 20, 1971.

3. Each of the instant motions contains the additional allegation that the aforementioned subpoenas should be quashed insofar as Mr. Levin is not authorized to present evidence to the federal grand jury. In the absence of any proof that Mr. Levin actually intends to be in attendance during the federal grand jury's deliberations, and/or to present evidence to said grand jury, this particular

objection is premature. Apparently realizing this fact, counsel for the movants have, during oral arguments proffered at the hearing previously held on the merits of this motion, restricted the breadth of the motions presently before the Court so as to challenge only Mr. Levin's legal authority to apply for the issuance of the subpoenas in question.

4. Said section 515(a) provides, in pertinent part, as follows:

§ 515—Authority for legal proceedings; commission, oath, and salary for special attorneys

(A) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

Consideration of the merits of these arguments follows immediately below.

## I. STANDING OF THE MOVANTS

As previously mentioned, the Government contends that the movants lack the requisite standing to successfully maintain the instant motions. The Government has cited the Supreme Court's decision in the United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) [5] and the First Circuit Court of Appeals' decision in In re Mintzer, 511 F.2d 471 (1st Cir. decided December 26, 1974), as case law supportive of the contention that the movants lack the standing to seek an order quashing the grand jury subpoenas in question.

■ It is this Court's considered opinion that the Government's contention that the movants lack the requisite standing to prosecute the instant motions to quash is without merit. This is not a case where a suppression of alleg-

edly illegally obtained evidence is sought.[6]

■ Most certainly, this Court recognizes that—

" '[c]itizens generally are not constitutionally immune from grand jury subpoenas . . .' and that 'the longstanding principle that "the public . . . has a right to every man's evidence" . . . is particularly applicable to grand jury proceedings.' " United States v. Calandra, supra, 414 U.S. at p. 345, 94 S.Ct. at p. 618.

Additionally, this Court acknowledges the need to avoid undue interference with, and delay of, grand jury deliberations. Accordingly, this Court adopts the conclusion set forth in the Calandra decision that a prospective witness is generally not—

"entitled 'to challenge the authority of the court or of the grand jury' or 'to set limits to the investigation that the

5. In referring to the Calandra decision, the Government has made the following notation:

" . . . [t]he court refused to extend the exclusionary rule to grand jury proceedings. The court based this conclusion on the need for expeditious handling of grand jury proceedings and further noted that it would have little deterrent effect, vis-a-vis the prosecutor's awareness that eventually he will have to suffer the consequences of basing his case on illegally obtained evidence . . . " See Government's Brief in Opposition to Motions to Quash Subpoenas, at p. 2.

6. The precedent cited by the Government in support of its contention that the movants lack the standing to maintain the instant motions clearly involve the question as to whether or not allegedly illegally obtained evidence should be, in one form or another, suppressed. See, e. g., United States v. Calandra, supra; In re Mintzer, supra. Certainly, this Court acknowledges that the exclusionary rule, so-called, does not apply to grand jury proceedings. See United States v. Calandra, supra.

The motions to quash presently before the Court do not concern themselves, in any manner whatsoever, with said exclusionary rule. Their scope and function is more akin to Rule 17(c) motions to quash unreasonable and oppressive grand jury subpoenas duces

tecum. See Rule 17(c), Federal Rules of Criminal Procedure. In regard to said Rule 17(c) motions the Supreme Court, in the Calandra decision, has noted that:

"The grand jury is also without power to invade a *legitimate privacy interest* protected by the Fourth Amendment. A grand jury's subpoena duces tecum will be disallowed if it is 'far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment . . . *Judicial supervision is properly exercised in such cases to prevent the wrong before it occurs* . . . " supra at P. 346, 94 S.Ct. at p. 619. (emphasis added).

The movants are seeking a court order which would prevent an allegedly unauthorized government official from invading their privacy interests by compelling their attendance before a Federal grand jury. Said movants are not seeking a court order prohibiting the government from using illegally obtained evidence to incriminate them. See United States v. Calandra, supra, at p. 348, 94 S.Ct. 613.

A grand jury subpoena which is issued on the application of an unauthorized government official could be considered as placing "unreasonable and oppressive" compliance demands on the prospective witness. It is clearly apparent, therefore, that the movants have the requisite standing to maintain their instant motions to quash.

grand jury may conduct.' " *supra*, at p. 345, 94 S.Ct. at p. 619.

It must be noted, however, that unauthorized parties cannot, and should not, be permitted to compel the attendance of prospective witnesses before a federal grand jury. Motions to quash grand jury subpoenas which have been issued pursuant to applications filed by an allegedly unauthorized Government official cannot, therefore, be considered premature. Parties who seek a court order quashing federal grand jury subpoenas which have allegedly been issued on the application of an unauthorized government official clearly have the requisite standing to file, argue and maintain their respective motions to quash.

## II. MR. LEVIN'S AUTHORITY TO APPLY FOR THE ISSUANCE OF THE GRAND JURY SUBPOENAS IN QUESTION

Resolution of the inquiry as to whether or not Mr. Levin has lawfully been empowered with the authority to apply for the issuance of the grand jury subpoenas in question, of necessity, involves an analysis of the following three relevant questions:

1. Was Richard G. Kleindienst properly authorized to appoint Mr. Levin as a special attorney?

2. Does Mr. Levin's letter of appointment of May 20, 1971, satisfy the "specificity" requirements set forth in section 515(a) of Title 28 of the United States Code?

3. Does the alleged violation of federal law currently under investigation by the grand jury, and concerning which the movants were subpoenaed to testify, fall within the purview of Mr. Levin's scope of authority as it is designated in

his May 20, 1971 letter of appointment?

### A. *Mr. Kleindienst's Appointment Powers*

As previously mentioned, the movants contend that Deputy Attorney General Kleindienst was not, on May 20, 1971, authorized to appoint Mr. Levin as a special attorney. Specifically, the movants contend that the Attorney General of the United States had, on May 20, 1971, *the exclusive and sole authority* to appoint Mr. Levin as a special attorney. *See* section 515(a); *Cf.* United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); United States v. Robinson, 359 F.Supp. 52 (S.D.Fla. 1973); United States v. Baldassari, 338 F.Supp. 904 (M.D.Pa.1972). Alternatively, the movants further argue that even if the Attorney General was authorized to delegate his section 515(a) appointment powers to his Deputy Attorney General, no such delegation of authority was made and/or in full force and effect on May 20, 1971.

The Government has argued, in response to the movants' aforementioned allegations, that the Attorney General of the United States was, on May 20, 1971, authorized to delegate his power to appoint Section 515(a) special attorneys. Moreover, the government contends that such a delegation to Deputy Attorney General Kleindienst had, in fact, been made prior to May 20, 1971, and that this delegation was in full force and effect on said date.

 When combined with the factual circumstances herein involved, the pertinent case law clearly compels the conclusion that the Attorney General of the United States has now, and had on May 20, 1971, authority to delegate his Section 515(a) power to appoint special attorneys.[7] The Attorney General's au-

---

7. *See*, e. g., United States v. Di Girlomo, 393 F.Supp. 997 (W.D.Mo.1975). Although the great majority of the cases cited by the government, in support of the Attorney General's purported authority to delegate his sec-

tion 515(a) appointive powers, concern delegations of authority to the Assistant Attorney General in charge of the Criminal Division of the Department of Justice, said cases clearly support the general proposition

thority to delegate his section 515(a) appointive powers derives from the provisions of section 510 of Title 28 of the United States Code.[8]

The movants' contention that the circumstances existing in the case presently before this Court are analogous to those set forth in the *Giordano* [9] case is, as the Government has aptly argued, "totally inappropriate". In the *Giordano* decision the Supreme Court affirmed a trial court order suppressing certain evidence obtained from unlawful and constitutionally impermissible wiretap interceptions.

The Supreme Court, in *Giordano*, premised its affirmance of said suppression order on the ground that 18 U.S.C. § 2516(1) [10] specifically prescribes that applications for wiretap orders which are submitted to federal judges must be endorsed exclusively by either the Attorney General of the United States or by an Assistant Attorney General specially designated by the Attorney General. The court order authorizing the wiretaps in the *Giordano* case was issued pursuant to an application signed by an Executive Assistant to the Attorney General. The Supreme Court held that said application was insufficient to support a court order authorizing a wiretap because—

"Despite § 510, Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated. Under the Civil Rights Act of 1968, for instance, certain prosecutions are authorized only on the certification of the Attorney General or the Deputy Attorney General, 'which functions of certification may not be delegated,' 18 U.S.C. § 245(a)(1). Equally precise language forbidding delegation was not employed in the legislation before us; but we think § 2516(1), fairly read, was intended to limit the power to authorize wiretap applications to the Attorney General himself and to any Assistant Attorney General he might designate. This interpretation of the statute is also strongly supported by its purpose and legislative history . . ." 416 U.S. at p. 514, 94 S.Ct. at p. 1826.

As previously mentioned, the *Giordano* decision is inapplicable to the circumstances found in the case at bar. Section 515(a) does not, as does section 2516(1), contain any express or implied statutory prohibition which would preclude the Attorney General from delegating his power to appoint special attorneys. Section 515(a) cannot, therefore, be considered as superseding the general and permissive "delegation" lan-

that the Attorney General can, in fact, delegate his section 515(a) appointive powers. *See* May v. United States, 236 F. 495 (8th Cir. 1916); United States v. Brodson, 390 F.Supp. 774 (E.D.Wis.1975); United States v. Albanese, 74 CR 814 (E.D.N.Y. Feb. 19, 1975); United States v. Brown, 389 F.Supp. 959 (S.D.N.Y.1975); Sandello v. Curran, M–11–188 (S.D.N.Y. Feb. 27, 1975); In re Cianciola, M–11–188 (S.D.N.Y. Feb. 27, 1975); United States v. Weiner et al., 392 F.Supp. 81 (N.D.Ill.1975); United States v. Kazonis et al., 391 F.Supp. 804 (D.Mass. 1975).

8. Section 510 reads, in pertinent part, as follows:
 § 510 Delegation of Authority
 The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

9. United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

10. Section 2516(1) provides, in pertinent part, as follows:
 "§ 2516. Authorization for interception of wire or oral communications.
 (1) *The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for . . . an order authorizing or approving the interception of wire or oral communications by* the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . .." (emphasis added).

guage found in 28 U.S.C. § 510.[11] *See* United States v. Brodson, 390 F.Supp. 774 (E.D.Wis.1975); United States v. Albanese, 74 CR 814 (E.D.N.Y. Feb. 19, 1975); United States v. Brown, 389 F. Supp. 959 (S.D.N.Y.1975); Sandello v. Curran, M–11–188 (S.D.N.Y. Feb. 27, 1975); United States v. Weiner, et al., 392 F.Supp. 81 (N.D.Ill.1975); United States v. Kazonis, 391 F.Supp. 804 (D. Mass.1975); United States v. Di Girlomo, 393 F.Supp. 997 (W.D.Mo.1975).

The question now arises as to whether or not Richard G. Kleindienst, as Deputy Attorney General of the United States, possessed, on May 20, 1971, the delegated authority to appoint Mr. Levin as a special attorney. The answer is, very definitely in the affirmative.

Pursuant to 28 U.S.C. § 510, and prior to May 20, 1971, the Attorney General delegated his appointive powers under section 515(a) to his Deputy Attorney General.[12] This delegation of authority was in full force and effect on May 20, 1971.[13]

It is clearly apparent, therefore, that the Attorney General had the power to, and did in fact, delegate his section 515(a) appointive powers to Deputy Attorney General Kleindienst.

### B. *Mr. Levin's Letter of Appointment and Section 515(a)'s Specificity Requirements*

Section 515(a) contains the express requirement that the appointment of a special attorney must, to be effective, be accompanied by a "specific direction", in one form or another, from the Attorney General or one of his authorized subordinates. The movants have, in reliance on this purported statutory requirement of specificity, challenged the validity of Mr. Levin's letter of appointment. Specifically, the movants contend that the provisions found in Mr. Levin's letter of appointment relating to his official powers and scope of authority are too broad and non-specific to satisfy the aforementioned section 515(a) specificity requirements.[14]

---

11. It must be noted that section 515 did not chronologically supersede section 510. Section 515 was enacted in 1906; and section 510 was adopted in 1950.

Additionally, this Court has been impressed with, and influenced by, the fact that Section 515(a) refers only to a special designation by the "Attorney General", while section 2516(1) adds the additional limiting language of "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General". As was pointed out by the Federal District Court for the Southern District of Florida, in United States v. Robinson, *supra*, at p. 58:

"... it is absolutely clear how far Congress intended that the Attorney General's power of subdelegation in wiretap authorizations should extend. It is a long-recognized rule of statutory construction that the enumeration of specific items implies the exclusion of all others ..."

The lack of such "specifications" in section 515(a) clearly implies a justification for a far more broad and liberal interpretation for said section than that afforded section 2516(1) in *Giordano*.

12. *See* 28 C.F.R. § 0.135, revised as of January 1, 1971.

Said § 0.135 reads, in pertinent part, as follows:

§ 0.135. Deputy Attorney General—
The Deputy Attorney General is authorized to exercise the power and authority vested in the Attorney General to take final action in matters pertaining to:
(b) The appointment of Assistant U. S. Attorneys and other attorneys to assist U. S. Attorneys when the public interest so requires. . . . "

Section 0.135 was revoked by Order number 543–75 on October 17, 1973. *See* 38 Fed. Reg. 29586.

13. As is mentioned in footnote 12, *supra*, section 0.135 was not revoked until October 17, 1973. The movants' allegation that sections 0.55 and 0.60 of Title 28 of the Code of Federal Regulations are applicable to the instant controversy is without merit insofar as said section 0.60 was not adopted until after Mr. Levin received his appointment, that is, said section 0.60 was enacted on June 29, 1972.

14. At this point it should be noted that the Department of Justice has utilized two basic forms for Strike Force letters of appointment. The first category, within which Mr. Levin's letter is included, is the more specific in its description of the appointee's pow-

Resolution of the inquiry as to whether or not Mr. Levin's letter of appointment satisfies section 515(a)'s specificity requirements, of necessity, entails a reasoned analysis as to the nature and scope of said requirements.

Section 515(a) was enacted by Congress in 1906 to clarify those powers of the Attorney General of the United States which has been called into question by the Federal District Court for the Southern District of New York in United States v. Rosenthal, 121 F. 862 (S.D.N.Y.1903). The Court held, in Rosenthal, that neither the Attorney General of the United States nor his "specially appointed attorneys" were statutorily endowed with the power to appear before federal grand juries. (121 F. at 869). In direct response to the Rosenthal decision, Congress enacted section 515(a)—

> "making it clear that the Attorney General and those under his direction were empowered to conduct any criminal or civil proceedings which United States Attorneys were authorized to conduct. H.R.Rep.No.2901, 59th Cong., Ist Sess. (1906)." United States v. Brown, *supra*, at p. 961.[15]

Subsequent to a careful perusal of the entirety of the legislative history of section 515(a), it has become clearly apparent to this Court that—

> ". . . [t]he Congress in enacting the statute which has now become § 515(a) was attempting to expand the authority of the Attorney General to comprehensively and effectively combat crime . . ." United States v. Brown, *supra*, at p. 960.

Consonant with this declaration of statutory purpose, it is similarly clear, as has been suggested, that—

> "The statute [the Act of 1906] should be given the meaning which is the more helpful and practical in the dispatch of the government's business . . ." United States v. Weiner et al., *supra*, citing United States v. Powell, 81 F.Supp. 288, 291 (E.D.Mo. 1948).

■ In order to give effect to the aforementioned congressional purpose of strengthening the powers of the Attorney General to "combat crime", the specificity provisions of section 515(a), which were adopted "mainly for the protection of the United States,"[16] must be liberally construed.[17] Unduly restrictive

---

ers and scope of authority. These "specific" letters contain a detailed enumeration of federal statutes the violation of which the Strike Force appointee is authorized to investigate. Subsequent to a listing of these discrete statutory provisions, said "specific letters authorize, in more general terms, investigations into alleged violations of "other criminal laws of the United States". The second, more general category, which has been widely utilized by the Department of Justice since 1972, contains solely very general language authorizing investigations into suspected violations of the criminal laws of the United States.

15. H.R.Rep.No.2901 reads, in pertinent part, as follows:

"... The purpose of this bill is to give to the Attorney General, or to any officer in his Department, or to any attorney specially employed by him, the same rights, powers, and authority which district attorneys now have or hereafter have in presenting and conducting proceedings before a grand jury or committing magistrate . . .

There can be no doubt of the advisability of permitting the Attorney General to employ special counsel in special cases, and there can be no question that if he has been employed because of his special fitness for such a special case that the Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial; including that of appearing before grand juries . . ."

16. *See*, e. g., Wall v. United States, 384 F.2d 758 (10th Cir. 1967); Shushan v. United States, 117 F.2d 110 (5th Cir.), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, rehearing denied, 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564 (1941); United States v. Weiner et al., *supra*; United States v. Powell, 81 F.Supp. 288, 291 (E.D.Mo.1948).

17. *See*, e. g., United States v. Albanese, *supra*; United States v. Brown, *supra*; Sandello v. Curran, *supra*; United States v. Weiner et al., *supra*; In re Cianciola, *supra*; United States v. Di Girlomo, *supra*.

requirements of form should not supersede the realities of substance.

■ With the above noted judicial precepts in mind, it is this Court's considered opinion that the requirements of specificity set forth in section 515(a) are satisfied by a letter of appointment which grants to a Strike Force attorney a broad scope of authority to prosecute any kind of legal proceeding.[18] No mention need be made in the letter of appointment to either the specific and/or generic subject matter of the case(s) in which criminal investigations will occur. When a letter of appointment is addressed to a Strike Force attorney, all that is required to satisfy section 515(a)'s specificity mandate is a broad grant of authority directing said special attorney to participate in the preparation and trial of cases involving violations of federal criminal statutes.[19]

In adopting this general standard concerning the degree of delineation required in a letter of appointment addressed to a Strike Force attorney, this Court has found the point of view espoused by the Federal District Courts for the Western District of Missouri, in In re Grand Jury Proceeding, Dominick Di Girlomo, *supra,* and the Southern District of New York, in United States v. Brown, *supra,* to be particularly instructive. In the Di Girlomo case,

Judge Hunter made the following pertinent and perceptive remarks:

"The Court has thoroughly reviewed the legislative history pertaining to the Act of June 30, 1906. Clearly, at that time, Congress was cautious in granting the Attorney General power to appoint special attorneys who were empowered to conduct legal proceedings which 'district attorneys' were authorized to conduct. And, concern was expressed over the provisions which permitted these attorneys to appear before the grand jury. . . . However, the Court respectfully disagrees with the view that the requirement of specificity as contained in United States v. Crispino, *supra,* will in some manner prevent the Attorney General from superseding the historic function of the United States Attorney and his appointed assistants or is necessary to achieve that purpose. Congress has since 1906 vested the Attorney General of the United States with enormous power, and has imposed on the person holding that office the duties and public trust that accompany that power. . . . Congress has clearly vested the Attorney General with the raw power to supersede the functions of the local United States Attorneys, and subjected them to his supervision. Although it may be said that Congress in 1906

---

18. United States v. Albanese, *supra;* United States v. Brown, *supra;* United States v. Weiner et al., *supra;* Sandello v. Curran, *supra;* United States v. Di Girlomo, *supra;* United States v. Di Muro, CR 74–228–C (D. Mass. April 3, 1975).

19. This Court adheres to the following viewpoint espoused by Judge Pollack of the Southern District of New York in United States v. Brown, *supra,* 389 F.Supp. at p. 963.

"The concerns expressed in *Crispino* on the subject of overly broad commissions do not seem to apply to Strike Force situations. The appointment of Strike Force attorneys was not intended to create a competition as between the regular local prosecutors and the members of the nationally organized strike force teams.

Each serve a separate need and purpose. One does not supersede the other—they complement each other's function. The situations dealt with by the Strike Force cannot be equated with routine and local situations [normally prosecuted in particular Districts nor to authorizations that might fall into legally insufficient competence . . .] Since the statute [28 U. S.C. 515(a)] does not confine its application to particular facts or particular defendants, it would appear appropriate for the Courts to implement the public policies to be served through Strike Forces by upholding a broad grant of authority and to sustain a commission that directs members of the specially selected Strike Force to prosecute any kind of legal proceeding . . . ."

was concerned with the usurpation of the functions of the local District Attorneys by the Attorney General and his assistants, this concern appears to have dissipated when in 1948 Congress expressly vested the Attorney General with complete control over all criminal prosecutions. Act of June 25, 1948, c. 646, § 1, 62 Stat. 910, formerly 28 U.S.C. § 507(b)", at p. 1005.

In the *Brown* opinion Judge Pollack made the following persuasively cogent observations:

> "An examination of the history and purposes of the strike forces reveals the reason why this broad grant of power and direction was considered necessary by the Dept. of Justice and why it is proper . . .
>
> While the appointment of single special prosecutors, each commissioned ad hoc to focus on specific instances of crime, and each having a particular legal competence, may have been appropriate in the early years of this century, by the latter part of the 1960's, conditions had clearly changed . . .
>
> The statutory requirement of a specifically directed authorization was apparently enacted in an atmosphere of the appointment of individual special prosecutors with particularized experience for particular cases. But this should not be and has not been interpreted as a requirement to thwart the comprehensive sweep of the statutory language, which was to facilitate the government's prosecutorial efforts when unleashed by the Attorney Gen-

eral to deal with rackets and organized crime through an elite corps of the government's prosecutors . . . Section 515(a) of Title 28 U.S.C. may properly be read not as a limitation but as a broad grant authorizing commissions as general as those in the letters questioned here . . ." *supra,* at p. 961.

One further reiteration is in order to ensure clarification of this Court's determination on this "specificity" issue. A Strike Force Letter of Appointment will not be declared invalid for noncompliance with section 515(a)'s specificity requirements merely because said letter authorizes its respective appointee to investigate any and all suspected violations of federal criminal laws.

■ Mr. Levin's letter of appointment clearly satisfies this standard. In fact, Mr. Levin's letter of appointment, which as previously mentioned contains not only a general and broad grant of authority (". . . other criminal laws of the U. S. . . . "), but also a specific, detailed enumeration of federal statutes the violation of which Mr. Levin is authorized to investigate, is far more specific than is required.[20]

The movants' allegation that Mr. Levin's letter of appointment fails to comport with section 515(a)'s specificity requirements must, therefore, be rejected.

C. *Mr. Levin's Authority to Investigate the Alleged Offense(s) in Question*

■ It is this Court's considered opinion that Mr. Levin's lawful authority to apply for the issuance of subpoe-

---

20. *See* United States v. Amazon Ind'l Chem. Corp., 55 F.2d 254 (D.Md.1931) ; *cf.* United States v. Crispino, 392 F.Supp. 764 at p. 777 (S.D.N.Y.1975).

". . . The commission letter set out in full in the *Williams* case authorized the special attorney [Mr. DeFeo] to assist in the trial of cases growing out of certain transactions named in the letter. The letter then specified over twenty different statutes which may have been violated . . . This court must respectfully dis-

agree with any intimation made by the Court in *Williams* in its analysis of section 515(a) and the cases construing that section . . ., that the special attorneys in that case were not properly authorized to appear before the grand jury. Those commissions are consistent with the analysis of the commissions in the cases discussed supra, and were clearly 'sufficiently specific' as called for by Judge Hand in *Morse,* supra . . . "

nas in grand jury investigations of alleged violations of "other criminal laws of the United States" embodies and embraces the power to apply for the issuance of subpoenas in grand jury investigations such as the one in the case at bar. Mr. Levin has informed this Court, both in oral argument and by sworn affidavit, that the subpoenas herein involved were issued in an effort to obtain information to aid the grand jury in the investigation of the varied circumstances surrounding the death of one Richard A. Callei.[21] In his aforementioned affidavit, Mr. Levin has further notified the Court that it is his informed opinion that—

(1) Callei was seen alive in Rhode Island some four to five hours before he was found buried in Rehoboth, Massachusetts;

(2) Callei had, during the last several years of his life, been engaged in illegal gambling and extortionate credit transactions;

(3) Callei was an active member of the New England Organized Crime Family, and "that the purpose of this Family was and is to engage in all forms of criminal activity, including gambling and loan sharking, to finance other criminal activities and to use the proceeds from this activity to acquire and maintain interests in enterprises as defined by 18 U.S.C. § 1961(4)";

(4) "The grand jury, in its inquiry, is trying to determine the scope of Callei's activities, the nature of the illegal gambling and extortionate credit activities in which he was engaged, what persons were holding any interests in any property, real or personal, for Callei, what these interests were, and what the property was. The potential violations of federal law with which the grand jury is concerned are 18 U.S.C. § 371 (conspiracy), § 892 (making extortionate extensions of credit), § 894 (collection of extensions of credit by extortionate means), § 1952 (interstate travel or transportation in aid of racketeering enterprises), § 1955 (prohibition of illegal gambling business), and § 1962 (prohibited racketeering activities). In addition, because of the circumstances surrounding Callei's death the grand jury is inquiring into possible violations of 18 U.S.C. § 1201 (kidnapping) and § 2312 (transportation of stolen vehicles)."

■ This Court is, based upon the above showing, clearly satisfied that Mr. Levin has been empowered to participate in the grand jury investigation herein involved.[22] In conclusion, this Court affirms the validity of Mr. Levin's letter of appointment of May 20, 1971 and declares that Mr. Levin properly and lawfully filed the aforementioned applications seeking the issuance of the grand jury subpoenas in question.[23]

21. See affidavit of S. Michael Levin, dated April 4, 1975.

22. Although the matter presently before the Court solely concerns Mr. Levin's authority to apply for the issuance of the grand jury subpoenas in question, this Court is convinced, based upon its study of the relevant statutes and case law, that Mr. Levin's lawful authority to participate in grand jury investigations encompasses and includes his attendance before, and presentation of evidence to, the grand jury during its deliberations. *Cf.* Wall v. United States, 384 F.2d 758 (10th Cir. 1967); United States v. Di Girlomo, *supra*, at p. 1001 ("If attorneys . . . have been specially appointed in accordance with the provisions of Section 515(a) they are authorized under Rules 6(d) and 54(c) to be present while the grand jury is in session."); United States v. Brodson, *supra*; United States v. Heinze, 361 F. Supp. 46 (D.Del.1973).

23. The movants' remaining arguments in support of their contention that Mr. Levin was not authorized to apply for the issuance of the grand jury subpoenas herein involved are rejected as being totally without legal merit.

## III. SHOULD THE SUBPOENAS HEREIN INVOLVED BE QUASHED BECAUSE THEY PURPORT TO COMPEL THE APPEARANCE OF A TARGET DEFENDANT BEFORE THE GRAND JURY

 It has been well settled that grand jury subpoenas are not invalid merely because they compel the appearance of a target defendant before the federal grand jury. *See,* e. g., In re Antonio Lopreato, 511 F.2d 1150 (1st Cir. 1975); United States v. Addonizio, 313 F.Supp. 486 (D.N.J.), affirmed, 451 F.2d 49 (3rd Cir.), cert. denied, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812, rehearing denied, 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972); United States v. Sweig, 316 F.Supp. 1148 (S.D. N.Y.1970). The movants' contention that the subpoenas in question are invalid because they purport to compel the appearance of a target defendant before the grand jury must, therefore, be rejected.[24]

## IV. SHOULD THE SUBPOENAS HEREIN INVOLVED BE QUASHED BECAUSE THEY FAIL TO "ENTITLE THE PROCEEDING" IN QUESTION

 The movants' claim that the subpoenas in question should be quashed because they fail to "entitle the proceeding" is clearly without merit. The mere assertion that this allegation could justify the grant of a motion to quash a grand jury subpoena, unreasonably, unwisely and myopically places form over substance.

The language of Rule 17(a) of the Federal Rules of Criminal Procedure itself supports the viewpoint that a grand jury subpoena should not be considered invalid solely because it lacks, on its face, the "title . . . of the proceeding".

Rule 17(a) sets forth certain procedural requirements for both civil and criminal actions. The language of the rule clearly implies that there may be situations where subpoenas are issued before a judicial proceeding acquires a title. Specifically, the pertinent language states that—

". . . It shall state the name of the court and the title, *if any,* of the proceeding . . ." (emphasis added).

It is obvious that no title can be affixed to a pre-indictment grand jury investigation. Common sense and simple logic compel the conclusion that grand jury subpoenas, similar to those presently in issue before the Court, are not invalid merely because they lack a designation of "the title . . . of the proceedings".

In conclusion, it is this Court's considered opinion that the grand jury subpoenas herein involved are legally valid in all respects. Accordingly, the instant motions to quash said subpoenas must be, and are, denied. The United States Attorney shall prepare an appropriate order in conformity with this opinion.

---

24. As has been aptly noted by the Government, the movants' reliance on the Supreme Court's grant of certiorari in United States v. Mandujano, 496 F.2d 1050 (5th Cir.), cert. granted, 420 U.S. 989, 95 S.Ct. 1422, 43 L.Ed.2d 669 (1975), is misplaced, insofar as that grant of certiorari relates solely to the following narrowly drawn issues:

"(1) Is 'putative' defendant called as grand jury witness entitled to advice, prior to testimony, of his Fifth Amendment privilege?

(2) Is such 'putative defendant' entitled to complete Miranda warnings prior to testifying?

(3) Is every grand jury witness against whom government has incriminating evidence at time he is called to testify a 'putative defendant'?

(4) If some form of advice is required, should failure to give adequate warning to 'putative defendant' result in suppression of his testimony in subsequent perjury prosecution?" 16 CRL 4221.

EXHIBIT A

OFFICE OF THE DEPUTY ATTORNEY GENERAL
WASHINGTON, D.C. 20530

May 20, 1971

Mr. S. Michael Levin
Criminal Division
Department of Justice
Washington, D. C.

Dear Mr. Levin:

As an attorney and counselor at law you are hereby specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the case or cases growing out of the transactions hereinafter mentioned in which the Government is interested. In that connection you are specifically directed to file informations and to conduct in the District of Rhode Island and in any other judicial district where the jurisdiction thereof lies any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized by law to conduct.

The Department is informed that various persons, companies, corporations, firms, associations, and organizations to the Department unknown have violated in the above-named district and in other judicial districts the laws relating to extortion in aid of racketeering (18 U.S.C. 1951), embezzlement of union funds (29 U.S.C. 501(c)) and the funds of welfare and pension plans (18 U.S.C. 664), payments by employers to their employees and to officials of labor organizations (29 U.S.C. 186), the filing of reports and the maintenance of records by unions and union officials (29 U.S.C. 439), deprivation of the rights of a union member by force (29 U.S.C. 530), obstruction of justice (18 U.S.C. 1503), obstruction of criminal investigations (18 U.S.C. 1510), obstruction of state or local law enforcement (18 U.S.C. 1511), travel and transportation in aid of racketeering (18 U.S.C. 1952), transmission of bets, wagers, and related information by wire communications (18 U.S.C. 1084), interstate transportation of wagering paraphernalia (18 U.S.C. 1953), prohibition of illegal gambling businesses (18 U.S.C. 1955), racketeer influenced and corrupt organizations (18 U.S.C. 1962), perjury (18 U.S.C. 1621), false declarations (18 U.S.C. 1623), mail fraud (18 U.S.C. 1341), fraud by wire (18 U.S.C. 1343), interstate transportation of stolen property (18 U.S.C. 2314), wire and radio communication (47 U.S.C. 203 and 501), internal revenue (26 U.S.C. 7201-7206), and other criminal laws of the United States and have conspired to commit all such offenses in violation of Section 371 of Title 18 of the United States Code.

You are to serve without compensation other than the compensation you are now receiving under existing appointment.

Please execute the required oath of office and forward a duplicate thereof to the Criminal Division, Department of Justice.

Sincerely.

Richard G. Kleindienst
Deputy Attorney General