**UNITED STATES of America,**
**Plaintiff,**

v.

**William Robert WRIGLEY,**
**Defendant.**

**No. 74 CR 448-W-1.**

United States District Court,
W. D. Missouri, W. D.

March 11, 1975.

Bert C. Hurn, U. S. Atty., Philip J. Adams, Jr., Sp. Atty., Dept. of Justice, Kansas City, Mo., for plaintiff.

David R. Freeman, Federal Public Defender, Kansas City, Mo., R. Thomas Day, Asst. Federal Public Defender, for defendant.

MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

JOHN W. OLIVER, District Judge.

This case now pends on defendant's motion to dismiss, filed February 21, 1975. Defendant relies primarily upon

this Court's memoranda and orders dismissing the indictment in United States v. Agrusa, 392 F.Supp. 3, filed February 25, 1975. The first two parts of the government's brief in opposition, filed March 4, 1975, are a repetition of arguments heretofore considered and rejected in United States v. Williams, 378 F.Supp. 61, and in United States v. Agrusa, supra. Those arguments are again rejected for the reasons heretofore stated in the cited opinions, which we expressly incorporate herein by this reference.

Part III of the government's brief in opposition, entitled "The 'Strike Force' Concept," presents a new argument not heretofore discussed by this Court.

That argument is based primarily on the recent opinion of the Honorable Milton Pollack, Southern District of New York, in United States v. Brown, 389 F.Supp. 959, decided February 25, 1975. The general thrust of the government's new argument relies on President Nixon's 1969 message to the Congress on "Organized Crime." The government quoted the following portion of that message:

> This administration is urgently aware of the need for extraordinary action and I have already taken several significant steps aimed at combating organized crime. I have pledged an unstruing [sic] commitment, with an unprecedented amount of money, manpower, and other resources to back up my promise to attack organized crime. For example, I have authorized the Attorney General to engage in wiretapping of organized racketeers. I have authorized the Attorney General to establish 20 Federal racketeering field offices all across the Nation. I have authorized the Attorney General to establish a unique Federal-State Racket Squad in New York City. I have asked all Federal agencies to cooperate with the Department of Justice in this effort and to give priority to the organized crime drive. [See, S.Rep.No.91–617, 91st Cong. 1st Sess. 45 (1969)]

The government then "submitted that the Congress in enacting the Organized Crime Control Act of 1970 gave its unequivocal approval to the Strike Force concept discussed in the President's message." [Page 26 of government's brief]

The government also directs our attention to portions of the 1970, 1971, and 1973 Annual Reports of the Attorney General which contain somewhat vague and conclusory references to "Strike Forces" and to "Organized Crime." In regard to the Organized Crime and Racketeering Section of the Criminal Division of the Department of Justice, the government states that "the supervision of federal enforcement of general criminal statutes is assigned to this Section whenever it is determined that the subjects under investigation are affiliated with syndicated criminal operations." [Page 25 of the government's brief].

The government does not state who, how, or under what guidelines or power the determination that "the subjects under investigation are affiliated with syndicated criminal operations" is made in order that the supervision of particular cases becomes subject to assignment to the Organized Crime and Racketeering Section of the Criminal Division of the Department of Justice.[1]

 We do not believe that statements in President Nixon's message to Congress on "Organized Crime" or statements in the Annual Reports of

---

[1]. Obvious questions of selective prosecution may be presented by the procedures described by the government's brief in this case. Those questions are discussed in an increasing number of cases in which particular defendants are raising constitutional questions of selective prosecution. See, for examples, United States v. Mirabile (8th Cir. 1974), 503 F. 2d 1065, 1067; United States v. Swanson, and United States v. Gaffey (8th Cir. 1975), 509 F.2d 1205, and the cases cited in those decisions. In the latter two cases a claim of selective prosecution involving Project ACE was considered.

Attorney General Mitchell and Attorney General Kleindienst can be properly relied upon to determine the intention of the Congress which passed the Act of June 30, 1906, presently codified § 515(a), Title 28, United States Code. We therefore reject the government's new argument and respectfully note our disagreement with the rationale upon which Judge Pollack based his decision in United States v. Brown. The notion that the judicial branch of our government is somehow interfering with organized crime prosecutions when it renders a decision that the Attorney General must comply with Section 515 (a) is untenable. The government's brief in this case makes clear that someone in the Department of Justice in Washington makes some sort of identification of "subjects under investigation [who] are affiliated with syndicated criminal operations." The Attorney General could easily comply with the mandate of Section 515(a) by use of appropriate letters of appointment which would "specially appoint" and "specifically direct" a particular Special Attorney to conduct all proceedings, including grand jury proceedings, in connection with the particular individuals who have already been identified by someone in the Department of Justice in Washington. All questions of a Special Attorney's authority to appear before a grand jury in a particular judicial district would thus be mooted by the Attorney General's compliance with the statute. Compliance with Section 515(a) may be less convenient than the issuance of the blanket roving commissions in current use. But that is a question for the Congress to consider.

■ We are convinced that the government can not properly rely upon the passage of the Organized Crime Control Act of 1969 to support its new argument that the Congress, acting in 1906, intended to authorize the Attorney General to specially appoint and to specifically direct Special Attorneys under what is now Section 515(a) in the manner in which the recent Attorney Generals have elected to act.

All other arguments contained in the government's brief filed March 4, 1975 have been fully discussed in the opinions of this Court which we have incorporated by reference. We find and conclude that defendant's motion to dismiss should be granted for the reasons stated in those opinions, in the memoranda opinions filed in connection with this case, and for the reasons stated in this opinion in regard to the government's new argument.

Accordingly, it is

Ordered that defendant's motion to dismiss filed February 21, 1975 should be and the same is hereby granted.