**UNITED STATES of America,**
**Plaintiff,**

v.

**Irwin WEINER et al., Defendants.**

**No. 74 CR 336.**

United States District Court,
N. D. Illinois, E. D.
March 17, 1975.

————◆————

Thomas P. Sullivan and Robert Graham, Jenner & Block, Julius L. Echeles, Raymond Smith, Chicago, Ill., and Jerris Leonard, Washington, D. C., for defendants.

U. S. Atty. James R. Thompson by Asst. U. S. Attys. Mathias Leyden, Daniel Webb and Sp. U. S. Atty. Gary Shapiro, Chicago, Ill., for United States.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

On February 19, 1974 the above named defendants were charged with multiple violations of federal law by participating in a part of a "scheme and artifice to defraud" the Central States, Southeast and Southwest Teamsters Pension Fund.

One of the attorneys presenting evidence to the grand jury during an investigation of the defendants' activities here in the Northern District of Illinois was Gary S. Shapiro, a "special attorney" with the Criminal Division of the United States Department of Justice assigned to the Chicago Area Strike Force. Subsequently the defendants, who were in the sixth week of trial, made a formal motion to dismiss the indictment pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure. They charged that Mr. Shapiro was not authorized to appear before the grand jury in this case and that his appearance "tainted" the grand jury proceedings.

On December 27, 1973 Henry Petersen, then Assistant Attorney General wrote what appears to be a standard form letter [1] to Mr. Shapiro retaining and appointing him as a prosecutor. Shortly thereafter Mr. Shapiro, on January 10, 1974, executed the oath of office.

The statute under which Mr. Shapiro was appointed a "special attorney" is

[1]. Assistant Attorney General Henry Petersen's letter of December 27, 1973, reads as follows:

"Mr. Gary S. Shapiro
Criminal Division
Department of Justice
Washington, D. C.
Dear Mr. Shapiro:

The Department is informed that there have occurred and are occurring in the Northern District of Illinois and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.

As an attorney at law you are specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specially authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.

You are to serve without compensation other than the compensation you are now receiving under existing appointment.

Please execute the required oath of office and forward a duplicate thereof to the Criminal Division.

Sincerely,
/s/ Henry E. Petersen
HENRY E. PETERSEN
Assistant Attorney General"

codified at 28 U.S.C. § 515(a), and provides that:

"(a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

Apparently defendants' motion is based upon three very recent decisions which question the authority of a "special attorney" from the Department of Justice to appear before local grand juries. See United States v. Williams, 65 F.R.D. 422 (W.D.Mo., 1974); United States v. Crispino, 392 F.Supp. 764 (S.D.N.Y., 1975); United States v. Wrigley, 392 F.Supp. 9 (W.D.Mo., 1975). In response the government has directed the Court's attention to another set of decisions—just as recent—which uphold the authority of a strike force attorney to appear before the grand jury. See United States v. Brown, 389 F.Supp. 959, S.D.N.Y., 1975); Sandello v. Curran, M 11–188 (S.D.N.Y., 2/27/75); United States v. Brodson, 390 F.Supp. 774 (E.D.Wisc., 1975); In re Grand Jury Subpoena of Alphonse Perisco, 75 C 96 (E.D.N.Y., 1957). In addition motions dealing with this issue were denied by minute order without opinion in United States v. Forno, LU 74–35 (D.Nev., 1/23/75); United States v. Juillard, Inc., 74–554 (N.D.Cal., 1/10/75); United States v. Bert 4–82285 (E.D.Mich., 12/12/74). Currently there is no reported Court of Appeals decision that deals with this exact issue but the advent of such an opinion is quite probable in the near future.

## I. A REVIEW OF SECTION 515(a) INDICATES THAT THE PRESENCE OF SPECIAL ATTORNEYS AT GRAND JURY PROCEEDINGS IS NOT IMPROPER.

The legal right of "specially appointed" attorneys to appear before grand juries was not seriously disputed until 1903 in the case of United States v. Rosenthal, 121 F. 862 (2 Cir. 1903)[2]. In *Rosenthal*

---

2. Judge Werker's opinion in United States v. Crispino, *supra*, provides an excellent history of the Attorney General's power to appoint special United States Attorneys prior to 1903. However, this Court is of the opinion that prior 1903 law does not have any significant impact on the issue presently before the Court. The opinion states in part:

"By the Judiciary Act of 1789, 1 Stat. 73, Congress provided for the appointment of attorneys for each district whose duty was to prosecute 'crime and offenses, cognizable under the authority of the United States . . .' 1 Stat. at 92. These attorneys were eventually called District Attorneys and are now known as United States Attorneys. The same act also created the office of the Attorney General who in 1861 was charged with the general superintendence and direction of the District Attorneys. Despite the Attorney General's power of supervision, it was still the function of the District Attorneys to represent the United States in criminal and civil actions. See The Confiscation Cases, 74 U.S. (7 Wall) 454, 457–58, 19 L.Ed. 196 (1868).

In 1861 Congress also provided that the Attorney General could appoint special assistants to the District Attorneys to aid them in the discharge of their duties. When the Department of Justice was created in 1870 the Attorney General was authorized to appoined 'special assistant[s] to the Attorney General' to assist in the 'trial of any case.' As a check on his power to employ special counsel when needed, Congress required the Attorney General to certify that the services of special counsel were actually rendered and that the same services could not have been performed by the Attorney General or some other officer of the Department of Justice. See United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507 (1897). From 1861 to 1903 the Attorney General often employed such special counsel either as assistance to the various district attorneys or as special assistants to the Attorney General. Such counsel not only assisted in the trial of cases, but also participated in grand jury proceedings". (Footnotes omitted)

the Court found that since the Attorney General himself was not empowered to appear before grand juries, then "special attorneys" designated by the Attorney General were not "endowed with a power denied to the chief officer himself" (121 F. at 869). The *Rosenthal* decision was emasculated shortly thereafter when Congress passed 34 Stat. 816 on June 30, 1906, which is today known as 28 U.S.C. § 515(a). The act authorized "special attorneys" to engage in legal proceedings on behalf of the United States. It specifically included the right to appear in grand jury proceedings.

The legislative history of § 515(a) clearly indicates that it was intended as enabling legislation to restore the appointment powers of the Attorney General taken away by the *Rosenthal* decision.

". . . The purpose of this bill is to give to the Attorney General, or to any officer in his Department or to any attorney specially employed by him, the same rights, powers, and authority which district attorneys now have or may hereafter have in presenting and conducting proceedings before a grand jury or committing magistrate.

It has been the practice of the Attorney General for many years to employ special counsel to assist district attorneys in the prosecution of suits pending in their respective districts whenever the public interest demanded it. It has been the practice of such special counsel to appear, with the district attorney, before grand juries and committing magistrates and to assist in the proceeding pending there. This right passed unchallenged for many years, until the Circuit Court for the Southern District of New York, on March 17, 1903, in the case of the United States v. Rosenthal. . . ."

". . . This decision makes the proposed legislation necessary if the Government is to have the benefit of the knowledge and learning of its Attorney General and his assistants, or of such special counsel as the Attorney General may deem necessary to employ to assist in the prosecution of a special case, either civil or criminal. As the law now stands, only the district attorney has any authority to appear before a grand jury, no matter how important the case may be to the interests of the Government to have the assistance of one who is specially or particularly qualified by reasons of his peculiar knowledge and skill to properly present to the grand jury the question being considered by it. . . ."

"It seems eminently proper that such powers and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future.

If such a law is necessary to enable the Government to properly prosecute those who are violating its laws, it is no argument against it that some grand jury may be, perhaps, unduly influenced by the demands or importunities that may be made upon it by such special counsel. The same argument can as well be made against permitting a district attorney from attending a sitting of such jury.

There can be no doubt of the advisability of permitting the Attorney General to employ special counsel in special cases, and there can be no question that if he has been employed because of his special fitness for such a special case that the Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial, including that of appearing before grand juries. The law proposed by the bill under consideration seems to be the very necessary, because of the decision in the Rosenthal case, hereinbefore referred to, and the committee recommends its speedy enactment" H.R. Rep. No. 2901, 59th Cong., 1st Sess. (April 4, 1906).

Since 1906 § 515(a) has frequently been the subject of litigation. The key

issue, until the recent dilemma regarding the authority of "strike force" attorneys, centered around the question of whether the Attorney General *"specifically directed"* the appointee; or, whether the appointee was retained because of a special assignment that required a particular useful knowledge or skill.

The "specific direction" by the Attorney General to the specially appointed attorney is customarily by letter, which may be issued to each attorney individually or to an officer in immediate supervision over several other such officers, United States v. Hall, 145 F.2d 781, 785 (9th Cir. 1944). This authorization to conduct legal proceedings is complete when signed and need not be filed with the Court. Belt v. United States, 73 F. 2d 888 (5th Cir. 1934). Some courts have found that the requirement that the attorney be "specially directed [to] conduct any kind of legal proceeding" is mainly for the protection of the United States. Shushan v. United States, 117 F.2d 110, 114 (5th Cir. 1941), cert. denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, reh. denied 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564; United States v. Powell, 81 F.Supp. 288, 291 (E.D. Mo., 1948). Supposedly the requirement protects the United States against an abuse of discretion by the special attorney and unnecessary expense (see, e. g., Wall v. United States, 384 F.2d 758 (10th Cir. 1967).

The defendants have mounted their challenge on a claim that Mr. Shapiro's authorization is too broad. However most of decided cases under Section 515 (a) were brought because the letter of authorization was too narrow to permit the challenged conduct. In sustaining the broad powers of a specially appointed attorney to appear before grand juries Judge Augustus Hand, in United States v. Morse, 292 F. 273 (2 Cir. 1922) stated that:

"I see no reason for assuming, because on the face of the letter no interrelation is set forth, that it is not sufficiently specific. Indeed, it probably is as specific as was possible, if adequate power to deal with the situation without impairment of usefulness ·or unnecessary reduplication of labor were to be given. Nor does the fact that proceedings may be taken in more than one district render the authority broader than the act of 1906 justifies, for no such limitation seems necessarily involved in the language of the act, and to impose it would cause unnecessary inconvenience in enforcing the law" (292 F. at 276).

In *Powell, supra,* the Court looked with approval at United States v. Martins, 288 F. 991 (D.Mass.1923) which held that to require the assistant be designated by the Attorney General to act in each particular case would be unnecessarily narrow and technical. The Court, quoting *Martins,* said:

"The statute [the Act of 1906] should be given the meaning which is the more helpful and practical in the dispatch of the government's business, especially as this meaning has been placed upon it by the Department concerned" (81 F.Supp. at 291).

In United States v. Amazon Industrial Chemical Corp., 55 F.2d 254 (D.Md.1931) the authorizing letter was challenged as being overbroad. The court stated:

"Defendants claim that this commission is defective in that it fails to refer, either specifically or generally, to alleged violations of any federal statute. We consider that this argument is too great a refinement and not to be supported. It is true that the nature of the investigation, and the statute alleged to have been violated, are not set out in the appointment; and it is further true that it is customary to describe such an appointment with more particularity than was done in the present case. However, failure to do so is not fatal, because a mere matter of form and not of substance" (55 F.2d at 256).

■■ It can be seen, therefore, that while a "special attorney" may not exceed his authority and that a defendant

may challenge any actions beyond the scope of the Attorney General's direction, the letter of authority may define the scope of authority to suit the wishes of the United States. In the instant case, the letter of authority authorized the "special attorney" to conduct grand jury proceedings in the Northern District of Illinois regarding violations of federal criminal statutes by persons unknown. The broad authorization clearly encompassed the action by the "special attorney" in this case.

## II. AN EXAMINATION OF SPECIAL JUSTICE DEPARTMENT ACTIVITIES INDICATES THAT THE CURRENT BROAD GRANT OF DISCRETION AND POWER IS NECESSARY AND PROPER.

The Attorney General, with some exceptions, is vested with the function of all agencies, employees and officers of the Department, and may delegate to any employee, officer or agency of the Department any of the Attorney General's functions. Title 28, United States Code, Sections 509, 510. Prosecutions for federal crimes not otherwise specifically assigned to another officer of the Department of Justice and the coordination of enforcement activities directed against organized crime and racketeering have been delegated by the Attorney General to the Assistant Attorney General in charge of the Criminal Division of the Department of Justice, 28 C.F.R. § 0.55. The Assistant Attorney General in charge of the Criminal Division is authorized to designate attorneys to present evidence to grand juries in all cases under his supervision. 28 C.F.R. § 0.60. This delegation of authority to appoint "special attorneys" was approved in May v. United States, 236 F. 495 (8th Cir. 1916) in which the court held that:

"We do not think the act of June 30, 1906, in conferring the power of appointment upon the Attorney General, should be construed to mean that the Attorney General must, in all cases, sign the appointment himself, but that the power of appointment is conferred upon the Attorney General as other powers are conferred to be exercised by him personally or through his lawful assistants when duly authorized for such purpose" (236 F. at 500).

To permit attorneys under his supervision to fully investigate matters relating to organized crime, the authorization from the Assistant Attorney General must necessarily be broad to ensure that the "special attorneys" do not exceed the scope of their authority. Such broad authority vests the "special attorney" with many of the same rights, powers and authority which United States Attorneys have, a situation specifically contemplated in the enactment of the Act of June 30, 1906.

However, attorneys specially appointed by the Attorney General (such as the strike force members) do not have the power or practical ability to usurp the function of a local United States Attorney. In the Northern District of Illinois strike force attorneys are dependent upon the local United States Attorney for the following: allocation of grand jury time; allocation of office space, telephones, and other equipment; in fact, no indictment is valid without the United States Attorney's signature. United States v. Wright, 365 F.2d 135 (7th Cir. 1966); United States v. Keig, 334 F.2d 823 (7th Cir. 1964).

The use of the "strike force" attorneys to battle organized crime has been steadily on the increase since the original idea was introduced in the sixties. At the hearings before the Subcommittee on Criminal Laws and Procedures of the Judiciary Committee the Attorney General, John Mitchell, analyzed the strike force's function as follows:

"The strike force concept is bottomed on the view that a highly effective investigative effort can be achieved if investigators from different government agencies work together as a team. A strike force composed of experienced supervisory

investigators and attorneys, concentrating their efforts [on matters particularly identified as organized crime] can accomplish more than the loosely coordinated effort of the different agencies operating through routine and established practices. Central to the strike force design is the concept of mutual planning, based on combined intelligence and pooled experience. Participants in the project have the dual function of participating in the formulation of the group's strategy and coordinating the implementation of that strategy by their agency. In effect, each participant is a conduit for the dissemination of intelligence information to and from his agency for the other participants. Additionally, the *agency representative insures that the group acts in compliance with the internal regulations of his agency. It is of paramount importance to the project that assigned members' must be of supervisory level. Each participant must be able to secure the unqualified cooperation of his agency's local office, and to make or obtain high level decisions on the conduct of investigations by local or field personnel of his agency"* 91st Cong., 1st Sess. (1969).

Recently, in sustaining the legal right of "strike force" attorneys to appear before grand juries Judge Milton Pollack explained why a broad grant of authority under § 515(a) was necessary and proper, in United States v. Brown, *supra.* We take the liberty of quoting extensively from his well-reasoned opinion wherein he stated:

"An examination of the history and purposes of the strike forces reveals the reason why this broad grant of power and direction was considered necessary by the Department of Justice and why it is proper.

*While the appointment of single special prosecutors, each commissioned ad hoc to focus on specific instances of crime, and each having a particular legal competence, may have been appropriate in the early years of this* century, by the latter part of the 1960's, conditions had clearly changed. As the President said in a 1968 message to Congress, 'It is clear that sporadic, isolated, uncoordinated attacks on the disciplined army of the underworld cannot obtain lasting results.' 'To Insure the Public Safety—Message from the President of the United States', (H.Doc.250), 114 Cong. Record 2412 (Feb. 7, 1968).

The concept of 'strike forces' of federal officers to deal with organized crime was first developed by Attorney General Ramsey Clark during the presidency of Lyndon Johnson, in response to a general feeling on the part of the Administration and the Congress that the federal government had been ineffective in fighting crime. See, e. g., 'Federal Effect Against Organized Crime: Report of Agency Operations', by the Legal and Monetary Affairs Subcommittee of the House Committee of Government Operations (House Rep. No. 1574, 90th Congress, 2d Session), reported in 114 Cong. Record 21014 (July 12, 1968) at 21015: 'The Federal Government has not borne its obligation with the constancy and force that its role in the overall battle against organized crime demands.'

*In a message to Congress not long after taking office, President Nixon informed the Congress that the strike forces already set up would be continued and new units would be initiated. In his speech of April 23, 1969, the President said that the strike forces were necessary . . . ."*

"The statutory requirement of a specifically directed authorization was apparently enacted in an atmosphere of the appointment of individual special prosecutors with particularized experience for particular cases. But *this should not be and has not been interpreted as a requirement to thwart the comprehensive sweep of the statutory language, which was to facilitate the government's prosecutorial efforts when unleashed by the*

Attorney General to deal with rackets and organized crime through an elite corps of the government's prosecutors."

### III. THE CASES PRESENTED BY DEFENDANTS ARE NOT PERSUASIVE ON THE ISSUE NOR CONTROLLING UPON THIS COURT.

In presenting their motion to dismiss the defendants place great emphasis on the recent decisions in United States v. Crispino, *supra*; United States v. Williams, *supra*; and United States v. Wrigley, *supra*. The Court has reviewed these decisions which extensively discuss Section 515(a). In fact, this Court is in agreement with much of the analyses contained in these decisions. However, the Court believes the conclusions reached are in error.

United States v. Crispino is well researched and well written. The facts of the case parallel the situation presented in the present case. However, in concluding that the "strike force" attorney was improperly before the grand jury Judge Werker stated:

> "The commission letter issued to Mr. Padgett is a bold assertion of authority by the Attorney General to appoint special attorneys in any case regardless of its importance and regardless of whether any particular skill or knowledge is required. If upheld it would allow these special attorneys to supersede the local United States Attorneys and their regular assistants, whose statutory duty for the last 186 years has been to prosecute all offenses against the United States in their districts, in any cases involving a violation of a 'federal criminal statute.' Congress never intended to give such a broad authority when it passed the Act of 1906 even if the statute be for the 'prosecution of the United States,' and no case construing that statute supports such a proposition."

This Court believes this statement by Judge Werker to be inaccurate. As was previously stated (see pp. 86, 87) the local United States Attorneys are in no danger of losing their statutory power. "Special attorneys" such as "strike force" attorneys must depend upon overall coordination and cooperation from local United States Attorneys' offices. While it may be stated that "special attorneys" could conceivably perform their duties without total local cooperation, it cannot be stated, due to the sheer physical necessities alone, that "special attorneys" could usurp the duties and functions of a local United States Attorney. The *Crispino* opinion appears to forewarn a problem that could exist if the statute were not strictly interpreted. Yet the realities of federal criminal prosecution indicate that even if Section 515(a) is given the most liberal of interpretations there is no real danger.

The *Crispino* decision has not been the only view expressed in the Southern District of New York. Judge Milton Pollack's decision in United States v. Brown, *supra*, stands in direct contradiction to *Crispino*. We believe that *Brown* is the better view. Judge Pollack reviewed *Crispino* before ruling and stated that:

> "The concerns expressed in *Crispino* on the subject of overly broad commissions do not seem to apply to Strike Force situations. The appointment of Strike Force attorneys was not intended to create a competition as between the regular local prosecutors and the members of the nationally organized strike force teams. Each serve a separate need and purpose. One does not supersede the other—they complement each other's function. The situations dealt with by the Strike Force cannot be equated with routine and local situations normally prosecuted in particular Districts nor to authorizations that might fall into legally insufficient competence."

Defendants also direct the Court's attention to United States v. Williams, *supra*, wherein the court dismissed the indictment because of the failure of the

government to sufficiently respond to discovery orders entered by the court which related to the authority of certain "strike force" attorneys to present the *Williams* case to the grand jury. The disputed orders centered around the proposed production and *in camera* inspection of internal guidelines, agreements and memoranda of the Department of Justice as to the authority of "strike force" attorneys to appear before the grand jury and the efforts made to secure approval from the Justice Department for the prosecution of Williams.

In response to the court's order, the government took the position that the "special attorney" was legally authorized under Section 515(a) and that any requests for internal documents of the Justice Department would violate the interests of confidentiality in law enforcement and the exercise of prosecutorial discretion. The government also asked the court to reconsider its initial order, and stated that it might suffer dismissal of the case if the order was not modified. The court refused to modify its original order and on December 3, 1974 dismissed the indictment with prejudice.

The present case differs from *Williams* in several aspects: (1) there are no issues involving pre-indictment delay; (2) questions concerning who actually signed the commission letter [3] and whether internal Justice Department documents should be produced are not seriously pressed; and (3) the commission letters of the "special attorneys" in *Williams* differ markedly from the commission letter of Mr. Shapiro. The commission letter in the *Williams* case authorized the "special attorney" to assist in the trial of cases growing out of certain transactions named in the letter. The letter then specified over twenty different statutes which may have been violated. Included among the list was

29 U.S.C. § 439, the statute under which Williams was indicted.

The *Williams* decision was cogently criticized in the *Crispino* opinion. We join in the criticism and respectfully submit that *Williams* was decided incorrectly in light of the proper interpretation of Section 515(a) and the cases construing that section.

The final case cited by defendants is United States v. Wrigley, *supra*, and it apparently relies heavily on United States v. Williams, *supra*. In the digest of the opinion presented we see no points, authorities, or arguments which are substantially new or persuasive.

Ultimately each court that is presented with this question must analyze the overall effect of limiting the powers of "strike force" attorneys by narrowly assessing the scope of Section 515(a). Assuming, *arguendo*, that the legislative history of § 515(a) was silent on the question of the power of the Attorney General to designate "special attorneys" (which it clearly is not) the Court would still be required to interpret the statute in light of present day realities. What constitutional rights were the defendants denied by Mr. Shapiro's appearance before the grand jury? What harm or disadvantage did the defendants suffer because of Mr. Shapiro's presence? Would not the defendants be placed in the same position had the local United States Attorney appeared before the grand jury? Clearly defendants' motion is based on form and not substance. A "special" ability to execute his oath of office should not depend upon what type of form letter his superior uses in appointing him. As stated in United States v. Brown:

"Since the statute does not confine its application to particular facts or particular defendants, it would appear appropriate for the Courts to implement the public policies to be

---

3. On March 12, 1975 Mr. Shapiro, at the request of certain defense counsel, made an oral representation to the Court that as far as he could determine the signature on his authorization letter was Mr. Petersen's own signature. Mr. Leonard, one of the counsel for the defense, stated that he was satisfied with Mr. Shapiro's representation.

served through Strike Forces by upholding a broad grant of authority and to sustain a commission · that directs members of the specially selected Strike Force to prosecute any kind of legal proceeding. Indeed to hold that such commissions are insufficiently specific would not serve any public purpose but might have mischievous and drastic effects as a precedent against the current needs of law enforcement across the country. No fundamental rights are at stake here that need be conserved in the constitutional interests of criminal targets. There is a strong public interest in implementing the broad purposes of the Congress and the executive by upholding the authority of the special prosecutors of the Strike Force."

Accordingly, it is hereby ordered that defendants' motion to dismiss the indictment is denied.[4]

---

4.  This opinion reflects the identical conclusions reached in United States v. Blitzstein, 74 CR 744, issued previously by this Court.