**UNITED STATES of America,
Plaintiff,**

v.

**Raymond J. DULSKI et al.,
Defendants.**

**No. 74-CR-100.**

United States District Court,
E. D. Wisconsin.

May 23, 1975.

Henry G. Piano and Bruce B. Jacobson, Milwaukee, Wis., for defendants Dulski and Danowski.

Gary A. Glojek, West Allis, Wis., for defendant Kent.

Max E. Goldsmith, Milwaukee, Wis., for defendant Azzolina.

Richard E. Reilly, Milwaukee, Wis., for defendant Kermendy.

William J. Mulligan, U. S. Atty., Leah M. Lampone, Asst. U. S. Atty., Milwaukee, Wis., and Gregory H. Ward, Sp. Atty., U. S. Dept. of Justice, Chicago, Ill., for plaintiff.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a criminal case in which the defendants have been charged in an indictment with conducting an illegal gambling business in violation of 18 U.S.C. § 1955. Defendants Raymond J. Dulski, Donald J. Danowski, and George F. Kermendy have filed motions seeking a dismissal of the indictment. The issue that has been tendered is whether the special attorney who appeared before the grand jury was lawfully authorized to do so as required by Rule 6(d) of the Federal Rules of Criminal Procedure. The Court has concluded he was not, and the indictment must therefore be dismissed.

### I.

On December 27, 1973, Henry E. Petersen, then Assistant Attorney General in charge of the Criminal Division, signed a letter appointing Gregory H. Ward a special attorney of the Department of Justice. The letter reads as follows:

"December 27, 1973

"Mr. Gregory H. Ward
Criminal Division
Department of Justice
Washington, D. C.

"Dear Mr. Ward:

"The Department is informed that there have occurred and are occurring in the Eastern District of Wisconsin and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.

"As an attorney at law you are specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specially authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

"Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.

"You are to serve without compensation other than the compensation you are now receiving under existing appointment.

"Please execute the required oath of office and forward a duplicate thereof to the Criminal Division.

"Sincerely,
/s/ Henry E. Petersen
HENRY E. PETERSEN
Assistant Attorney General"

Mr. Ward took the oath of office referred to in Petersen's appointment letter on March 11, 1974, and subsequently appeared before the grand jury in the Eastern District of Wisconsin, which jury returned the instant indictment.

The statute under which Mr. Ward was appointed a special attorney [1] originated in the Act of June 30, 1906, 34 Stat. 816, and is presently codified at 28 U.S.C. § 515(a) :[2]

"The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

There has been no contention by the defendants that the Attorney General could not lawfully delegate the power to specially appoint attorneys under 28 U.S.C. § 515(a) to then Assistant Attorney General Petersen. See, 28 U.S.C. § 510; May v. United States, 236 F. 495 (8th Cir. 1916); United States v. Brodson and Halmo, 390 F.Supp. 774 (E.D.Wis. 1975). Contrast, United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L. Ed.2d 341 (1974). Further, there has been no opposition voiced to the Government's position that the Attorney General did delegate this power to Petersen under 28 C.F.R. §§ 0.55 and 0.60, and that Petersen did in fact sign the December 27, 1973, letter appointing Mr. Ward a special attorney.[3]

The serious question that is presented by the motions to dismiss is whether Mr. Ward was "specifically directed" by Petersen, within the meaning of § 515(a), to present this case to the grand

---

1. At oral argument, the Government expressly disclaimed that Mr. Ward could have authority as an assistant United States attorney pursuant to 28 U.S.C. § 542 or § 543.

2. All statutes cited are from Title 28, U.S.C., except where otherwise indicated.

3. The Government has filed an affidavit purporting to be that of former Assistant Attorney General Henry E. Petersen. The affidavit relates that on December 27, 1973, Petersen was the Assistant Attorney General in charge of the Criminal Division of the United States Department of Justice, and that on that date he signed a letter, set out above, appointing Gregory H. Ward as a special attorney. The defendants have not contended that the affidavit is not Petersen's, nor have they challenged the accuracy of the statements contained therein.

jury. The importance of this issue extends beyond the instant case, since nearly identical appointment letters have been used to appoint special attorneys, pursuant to § 515(a), and staff "strike force" field offices throughout the country.

Close inspection of § 515(a) reveals that there are two possible meanings which can be attributed to the requirement that the special attorney be "specifically directed." One is that the language "specifically directed" only requires that the special attorney be directed to participate in a specified kind of proceeding. The other construction is that there must be a direction that the special attorney is to participate in conducting a particular case or type of cases. United States v. Martins, 288 F. 991 (D.Mass.1923). Either construction is equally warranted by the language of the statute. The choice of constructions can be made only after an examination of the relation of § 515(a) to the statutes establishing the network of United States attorneys and a review of the history of § 515(a).

## II.

Title 28 U.S.C., Chapter 35, §§ 541–550, establishes a nationwide system of United States attorneys. The United States attorneys are appointed by the President with the advice and consent of the Senate, § 541(a), and can only be removed by the President. § 541(c). They have a four-year term of office. § 541(b). The United States attorneys and the assistant United States attorneys must live in the judicial district to which they are appointed. § 545(a). Section 547 provides for the duties and powers of the United States attorneys and states:

"Except as otherwise provided by law, each United States attorney, within his district, shall—

"(1) prosecute for all offenses against the United States; * * *."

While these statutes provide the United States attorneys with substantial power, independence, and responsibility for the prosecution of cases within their districts, they are not totally independent of the Attorney General. Under 28 U.S.C. § 519, the Attorney General has the power to supervise all litigation to which the United States is a party, and to direct the United States attorneys "in the discharge of their respective duties." The Attorney General also has the statutory power to investigate the official acts of United States attorneys, § 526(a)(1), and can direct them to make reports to him. § 547(5). The Attorney General also has the power of appointing and removing assistant United States attorneys. § 542.

Viewing all these statutory provisions together, it is apparent that the legislative scheme created by Congress is one in which the primary responsibility for the prosecution of offenses against the United States is placed in the hands of the United States attorney who is appointed from his district for a term of years and is only removable by the President. Although the United States attorneys are subject to the Attorney General, they are not his employees, and it is evident that Congress intended that the United States attorneys only be circumvented under special circumstances; it should be for something unusual and not as a standing operating procedure.

This legislative scheme is in the spirit of the federalism which is built into our laws which makes it difficult to concentrate power in the hands of those in Washington. The Attorney General's prosecutory power is limited by the established system of United States attorneys, and the Attorney General's expansion of that power is limited by § 515(a). In oral argument, the special attorney argued that § 515(a) gives him the same power and authority in this district that the United States attorney has. Congress never intended this. The decision to grant the primary power and responsibility for prosecution of all federal crimes to a single United States attorney in each district is one which can-

not be viewed to be irrational in light of the constitutional decision to have a federal rather than a national government.

The Government has argued, however, that the Act of 1906, now codified as 28 U.S.C. § 515(a), had the effect of allowing the Attorney General to supersede the local United States attorneys and their assistants by appointing special attorneys and endowing them with roving commissions to take the very actions which are statutorily entrusted to the United States attorneys. Attention must therefore be focused on the legislative history and subsequent judicial interpretations of § 515(a).

### III.

The Act of 1906, now codified as 28 U.S.C. § 515(a), was enacted in response to the decision in United States v. Rosenthal, 121 F. 862 (C.C.S.D.N.Y.1903). There, Mr. W. Wickham Smith was commissioned a special assistant to the Attorney General to "'* * * investigate and report concerning alleged fraudulent importations of Japanese silks at the port of New York, and to prepare and conduct such civil and criminal proceedings as may result therefrom.'" 121 F. at 863. Smith pursued the investigation of the alleged offenses and chiefly conducted the grand jury proceedings. The defendants' motions to quash the resulting indictments on the ground that Smith was not legally authorized to conduct the grand jury proceedings were granted.

In *Rosenthal,* Judge Thomas first ruled that the statutory power of the Attorney General to conduct and argue any "case" in any court did not authorize him to make appearances before grand juries. 121 F. at 866–867. Since Smith was not commissioned as an assistant to the District Attorney but only as a special assistant to the Attorney General, the conclusion that the Attor-

ney General had no power to appear before grand juries necessitated the conclusion that Smith also lacked such power:

"By what logic can it be enforced that the assistant to the Attorney General may be endowed with a power denied to the chief officer himself? Powers that are nonexistent cannot be delegated by a superior to an inferior. A principal conveys to his agent what he has, and not what is denied him, and what he has not." 121 F. at 869.

Thus, the power of special assistants to the Attorney General was held to be limited to participation in trials and other pending litigation.

In response to *Rosenthal,* Congress passed the Act of June 30, 1906, 34 Stat. 816, which is currently codified at 28 U.S.C. § 515(a). The Act enabled special attorneys to conduct legal proceedings, including grand jury proceedings, "when specifically directed by the Attorney General." Bills were introduced in both Houses of Congress, and the House bill was passed.[4] The complete House Report provided as follows:

"Mr. Gillett of California from the Committee on the Judiciary submitted the following:

"The Committee on the Judiciary, having had under consideration the bill (H.R. 17714) to authorize the commencement and conduct of legal proceedings under the direction of the Attorney-General, respectfully report the same back with the recommendation that the same do pass.

"The purpose of this bill is to give to the Attorney-General, or to any officer in his Department or to any attorney *specially employed* by him, the same rights, powers, and authority which district attorneys now have or may hereafter have in presenting and conducting proceedings before a grand jury or committing magistrate.

---

4. The Senate version of the bill (S.2969) did not contain the requirement that a special attorney be "specifically directed by the At-

torney General." 40 Cong.Rec. 7913–14 (1906).

"It has been the practice of the Attorney-General for many years to employ special counsel to assist district attorneys in the prosecution of suits pending in their respective districts whenever the public interest demanded it. It has been the practice of such special counsel to appear, with the district attorney, before grand judges and committing magistrates and to assist in the proceeding pending there. This right passed unchallenged for many years, until the Circuit Court for the Southern District of New York, on March 17, 1903, in the case of the United States v. Rosenthal, decided that—

" 'The Attorney General, the Solicitor General, nor any officer of the Department of Justice, is authorized by sections 359, 367, or other provision of the Revised Statutes of the United States [U.S.Comp.St. 1901, pp. 207, 209], to conduct, or to aid in the conduct of, proceedings before a grand jury, nor has a special assistant to the Attorney General such power.'

"And the court further held that—

" 'A special assistant to the Attorney General, appointed to investigate and report concerning alleged fraudulent importations of Japanese silks at the port of New York, and to prepare and conduct such civil and criminal proceedings as may result therefrom, is not authorized by law to conduct, or to aid the conduct of, proceedings before a federal grand jury, and indictments based upon such proceedings so conducted should be quashed upon motion.'[5]

"This decision makes the proposed legislation necessary if the Government is to have the benefit of the knowledge and learning of its Attorney-General and his assistants, or of such special counsel as the Attorney-General may deem necessary to employ to assist in the prosecution of *a special case*, either civil or criminal. As the law now stands, only the district attorney has any authority to appear before a grand jury, no matter how important the case may be to the interests of the Government to have the assistance of one who is *specially or particularly qualified* by reasons of his *peculiar knowledge and skill* to properly present to the grand jury the question being considered by it.

"The Attorney-General states that it is necessary, in the due and proper administration of the law, that he shall be permitted to employ special counsel to assist the district attorney in cases which district attorneys or lawyers *do not generally possess,* and in cases of such *usual* [sic] [6] *importance to the Government,* and that such counsel be permitted to possess all of the power and authority, in *that particular case,* granted to the district attorney, which, of course, includes his right to appear before a grand jury either with the district attorney or alone.

"It seems eminently proper that such powers and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future.

"If such a law is necessary to enable the Government to properly prosecute those who are violating its laws, it is no argument against it that some grand jury may be, perhaps, unduly influenced by the demands or importunities that may be made upon it by such special counsel. The same argument can as well be made against permitting a district attorney from attending a sitting of such jury.

"There can be no doubt of the advisability of permitting the Attorney-General to employ *special* counsel *in special cases,* and there can be no

---

5. The quotations from *Rosenthal* are from the headnotes.

6. This appears to be a typographical error and should be "unusual."

question that if he has been employed because of his *special fitness* for such *a special case* that the Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial, including that of appearing before grand juries.

"The law proposed by the bill under consideration seems to be very necessary, because of the decision in the Rosenthal case, hereinabefore referred to, and the committee recommend its speedy enactment." H.R.Rep.No. 2901, 59th Cong., 1st Sess. (1906). (Emphasis added.)

The Court believes Judge Werker's statement of the intent of Congress in enacting the Act of 1906 is entirely correct:

"The House Report leaves no room for doubt that Congress intended the Attorney General to have the power to appoint special attorneys to prosecute a particularly important case or a special case or cases. This power was seen as a necessary aid to effective law enforcement. Rather than restricting the appearances of these attorneys to the trial of cases, it was deemed appropriate that they appear in every step of the litigation including grand jury proceedings. However, since the district attorneys and their regular assistants had the responsibility for prosecuting all crimes in their districts, the appearance of special attorneys before grand juries was limited to special cases where the Attorney General concluded that the particular knowledge and skill of these special attorneys would be useful." United States v. Crispino, 392 F.Supp. 764, 772 (S.D.N.Y., 1975).

Following the enactment of the Act of 1906, several courts were called upon to decide the meaning of the language "specifically directed" in the context of attorneys appointed under what is now § 515(a) appearing before grand juries. At least one case, United States v. Coh-

en, 273 F. 620 (D.Mass.1921), dismissed an indictment where the appointment letter was too narrow to cover the actions—filing informations—which the special attorney had taken. Several other cases dealt with whether the appointment letters were sufficiently specific, i.e., whether the letters had to specify particular persons, statutes, or districts.

In United States v. Goldman, 28 F.2d 424 (D.Conn.1928), the Court ruled that an attorney appointed as a special assistant to the United States attorney for the district of Connecticut who acted as a stenographer before the grand jury was not lawfully present there because his commission letter did not specify any particular case or person. The Court stated:

"The authority of this commission is the Act of June 30, 1906, quoted supra. In that act is found this limitation: 'May, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding.' As we understand it, the commission which may be issued under that act *must* designate the specific case or cases to which the employment relates and the district or districts to which it extends. If this is not so, it would follow that the Attorney General of the United States could, under the act now under discussion, issue a roving commission without any limitations, extending to every district in the United States and embrace all criminal investigations. No such power is conferred by the act. * * *

* * * * * *

"The commission here under consideration does not specify any particular case, or give the name of any particular offender who may be proceeded against, either alone or with others associated with him. On the contrary, the commission provided that Mr. Roberts was 'to assist in the investigation and prosecution of alleged violations of the National Prohibition Act, and in that connection you are

specifically directed to conduct * * * any kind of legal proceedings, * * * including grand jury proceedings.' From this language it is clear that an appointee under it could replace or act with the duly constituted district attorney for this district, and either take charge of or participate in investigations for alleged violations of the act. But the Act of June 30, 1906, under which the Attorney General derives his power to issue the commission, cannot be construed so as to give the Attorney General such unlimited powers. The constitutional, statutory, and specifically designated officials only are permitted to perform such duties, except as qualified and extended by the Act of June 30, 1906, and as to the trial of cases under the provisions of Revised Statutes, §§ 363–366." 28 F.2d at 430, 431.

Other cases have upheld indictments where the appointment letter specified several particular persons together with "others," and persons not named in the appointment letter were indicted. Shushan v. United States, 117 F.2d 110 (5th Cir. 1941), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, rehearing denied, 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564 (1941); United States v. Amazon Industrial Chemical Corp., 55 F.2d 254 (D.Md.1931); United States v. Huston, 28 F.2d 451 (W.D.Ohio 1928); United States v. Morse, 292 F. 273 (S.D.N.Y. 1922). It must be noted, however, that in Shushan, the appointment letters specifically mentioned mail fraud cases, and in Huston and Morse, the appointment letters specified certain federal statutes. Further, the point has been made that the identities of all the persons who are eventually indicted may not be known at the commencement of an investigation. Shushan v. United States, 117 F.2d at 114; United States v. Amazon Industrial Chemical Corp., 55 F.2d at 257; United States v. Morse, 292 F. at 276.

In United States v. Amazon Industrial Chemical Corp., supra, it was also held that the appointment letter did not have to specify particular statutes, although, as noted above, the appointment letter there did name several particular persons who were to be investigated and prosecuted. Also, in United States v. Powell, 81 F.Supp. 288 (E.D.Mo.1948), an indictment for violations of federal law in a primary election was upheld although the special attorney's appointment letter was limited to investigating irregularities in the general election. The appointment letter in Powell did specify certain federal statutes, one of which was the basis for the indictment there.

In United States v. Huston, 28 F.2d 451 (N.D.Ohio 1928), the Court dealt with whether the district in which the special attorney was to act had to be specified in the appointment letter. The special attorney there had been authorized to act in the Western District of Missouri, the District of Minnesota, and "in any judicial district where the jurisdiction thereof lies." 28 F.2d at 454. The special attorney went to the Northern District of Ohio and began an investigation independent and unrelated to any investigation in Missouri or Minnesota. The Court concluded that the special attorney was not authorized to conduct grand jury proceedings in Ohio which were not "dependent or ancillary" to crimes in Missouri or Minnesota. 28 F.2d at 456.

United States v. Hall, 145 F.2d 781 (9th Cir. 1944), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945), involved the establishment of a Lands Division office in Los Angeles by the Justice Department which was staffed by special attorneys who were directed to conduct such Lands Division cases as were assigned to the office. The United States attorney had agreed to the transfer of specialized condemnation work to the Lands Division office and was no longer signing pleadings in condemnation cases. After the district court held it had no jurisdiction where the United States attorney did not " 'initiate and

prosecute' condemnation proceedings on behalf of the Government," United States v. 1,960 Acres of Land in Riverside County, Cal., 54 F.Supp. 867, 882 (S.D.Cal.1944), the Government petitioned the Ninth Circuit for a writ of mandamus. The Court stated that the Act of 1906, now codified as § 515(a)—

"* * * authorizes the Attorney General to institute litigation, to enter into pending litigation, and to cooperate with the district attorney or to *proceed to handle such litigation independent of the district attorney* and any officer of the Department of Justice may act in the same manner and to the same extent *providing he is authorized so to do by the Attorney General.* * * * And we are further of the opinion and we so hold that *such authorization need not be directed to specifically designated cases but may be designated and limited descriptively* as was done in the instant case by the Attorney General when he authorized Mr. Brett and the attorneys under his immediate direction to act in the kind of cases, to-wit, such *land cases* as from time to time shall be assigned to the Los Angeles Lands Division office." 145 F.2d at 785. (Emphasis added.)

These cases demonstrate the difficulty the courts have had in deciding whether various appointment letters were "sufficiently specific." United States v. Morse, 292 F. 273, 275 (S.D.N.Y.1922). There is authority for the proposition that the appointment letters do not have to specify particular persons, cases, or statutes, and that § 515(a) should be given an interpretation favoring the Attorney General's use of its provisions. The common thread running through all these cases, however, is that the appointment letters at the very least described the type of cases which the special attorneys were to present to grand juries. Requiring the appointment letters to

specify the type of cases which the special attorneys are to present is in accord with the congressional intent, as manifested in the House Report set out above, to limit the appearances of special attorneys to the "special case" which is of "such unusual importance to the Government" that it needs the assistance of an attorney "who is specially or particularly qualified by reasons of his peculiar knowledge and skill." H.R. Rep.No.2901, supra. Such a requirement limits the power of the Attorney General to supersede the United States attorneys who have the primary power and responsibility for prosecuting "all offenses against the United States." § 547(1). It is with such a requirement in mind that the recent cases dealing with special attorneys appointed under § 515(a) must be examined.

### IV.

After the decision in United States v. Powell, 81 F.Supp. 288 (E.D.Mo.1948), questions concerning the authority of special attorneys to appear before grand juries lay dormant for some twenty-six years. In United States v. Williams, 16 Cr.L. 2225 (W.D.Mo., Dec. 3, 1974), 16 Cr.L. 2223 (Nov. 15, 1974), however, Judge Oliver raised these issues. But after writing an extensive memorandum and entering several discovery orders, Judge Oliver was unable to resolve the question because the Justice Department was recalcitrant to his discovery orders, and therefore Judge Oliver dismissed the indictment with prejudice.[7]

The *Williams* decision produced a nationwide flurry of motions challenging the authority of special attorneys to appear before grand juries and the validity of indictments obtained by these special attorneys. The courts are not agreed on whether the form letters of appointment, identical to that used for Mr. Ward in this case, sufficiently comply with the requirement of § 515(a)

---

**7.** An appeal of *Williams* was dismissed on February 10, 1975, on the Government's motion after the Solicitor General refused to authorize the appeal. United States v. Agrusa, 392 F.Supp. 3 (W.D.Mo.1975).

that the special attorneys be "specifically directed." In United States v. Wrigley, 392 F.Supp. 14 (W.D.Mo., March 11, 1975), 392 F.Supp. 9 (W.D.Mo., Feb. 5, 1975) (Oliver, J.); United States v. Agrusa, 392 F.Supp. 3 (W.D.Mo., Feb. 6, and Feb. 25, 1975) (Oliver, J.); and United States v. Crispino, 392 F.Supp. 764 (S.D.N.Y.1975) (Werker, J.), indictments were dismissed because the blanket appointment letters lacked any specific direction. Other courts have, however, ruled that special attorneys were properly authorized to appear before the grand jury. In re: Grand Jury Subpoenas Addressed to: Raymond L. S. Patriarca, et al., 396 F.Supp. 859 (D.R.I. 1975); United States v. DiGirlomo, 393 F.Supp. 997 (W.D.Mo.1975) (Hunter, J.); United States v. Kazonis, 391 F. Supp. 804 (D.Mass.1975); United States v. Weiner, 392 F.Supp. 81 (N. D.Ill.1975); Sandello v. Curran, (No. M 11–188, S.D.N.Y., Feb. 27, 1975) (Tenney, J.); United States v. Brown, 389 F.Supp. 959 (S.D.N.Y.1975) (Pollack, J.).[8] See also, United States v. Brodson and Halmo, 390 F.Supp. 774 (E.D.Wis. 1975) (Gordon, J.).[9] No court of appeals has yet ruled on the question.[10]

None of the courts upholding the authority of special attorneys to appear before grand juries have seriously questioned the validity of the legislative history set out above, nor the conclusion that the intent of Congress in passing what is now § 515(a) was to facilitate the Attorney General's use of peculiarly qualified attorneys to present special

cases to grand juries. Further, the cases discussed above demonstrate that the various Attorneys General recognized that their power to supersede United States attorneys by virtue of § 515(a) was limited to special cases, and accordingly they did specify, at the very least, the type of cases which the special attorneys were to present to grand juries. See, United States v. Hall, 145 F.2d 781 (9th Cir. 1944), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945).

Several of the courts which have upheld the authority of special attorneys to appear before grand juries have premised their decision on the view that § 515(a) must be construed in light of modern conditions which have allegedly given rise to "organized crime" and an asserted need for Justice Department "strike forces" to combat it. United States v. Weiner, supra; Sandello v. Curran, supra; United States v. Brown, supra.

This view assumes that to grant the special attorneys any less authority than the United States attorneys have would make it impossible for the special attorneys to combat "organized crime." Nothing in the record before this court supports such a conclusion. In United States v. Wrigley, 392 F.Supp. 14 (W. D.Mo.1975), it is pointed out that to require the appointment letters to specifically designate the types of cases and areas of investigation which the special attorneys are to prosecute would only formalize what is already being done by the staff of the Justice Department.

8. Dismissal motions have also apparently been denied in United States v. Jacobson, No. 74 CR–936 (S.D.N.Y., Mar. 3, 1975); In re Jerry Langella (E.D.N.Y., Feb. 27, 1975); United States v. Ferri, No. 74–277 Criminal (W.D.Pa., Feb. 18, 1975); United States v. Blitzstein, No. 74 CR 744 (N.D.Ill.); In re Grand Jury Subpoena of Alphonse Perisco, No. 75 C 96 (E.D.N.Y.1975). The parties have not supplied the Court with opinions filed in these cases.

Additionally, dismissal motions were apparently denied by minute order without opinion in United States v. Farno, LV 74–35 RDF (D.Nev., Jan 23, 1975); United States v.

Juillard, Inc., 74–554 (N.D.Cal., Jan. 10, 1975); United States v. Bert, 4–82285 (E. D.Mich., Dec. 12, 1974).

9. While *Brodson* decided the special attorney was properly present before the grand jury, the issue of whether he was "specifically directed" is not discussed in the decision by Judge Gordon.

10. United States v. Wrigley, supra, will be appealed. 392 F.Supp. 14. Appeal is also likely in United States v. DiGirlomo, supra, since the defendant there was granted bail pending a determination by the Eighth Circuit. 393 F.Supp. 997.

In United States v. DiGirlomo, supra, one of the bases for the court's decision upholding the authority of special attorneys to appear before grand juries was that since the enactment of the Act of 1906, Congress has vested the Attorney General with increased statutory power, thereby granting him the raw power to supersede the local United States attorneys, and has abandoned the policy of entrusting primary control of federal prosecutions to the United States attorneys. This court must respectfully disagree. The statutory analysis set out above demonstrates that while the Attorney General has substantial supervisory power over the United States attorneys, Congress has not relieved them from the responsibility of prosecuting all offenses, § 547(1), and has accorded them some degree of independence.

The conclusion that Congress has not abandoned the requirement of § 515(a) that special attorneys be "specifically directed by the Attorney General" is buttressed by the failure of an amendment to § 515(a) in 1945. As set forth in United States v. Crispino, supra, n. 40, identical Senate (S. 1519) and House H.R. 4470) bills were introduced which would have eliminated § 515(a)'s requirement that special attorneys be "specifically directed by the Attorney General." The Senate bill was referred to the Committee on the Judiciary on October 26, 1945, but was never reported out.

The Government's argument that congressional approval of "strike forces" funding shows an implicit approval of the entire program, see Holtzman v. Schlesinger, 484 F.2d 1307 (2d Cir. 1973), merits no comment save that there is no showing that Congress has done anything other than presume that the "strike forces" were properly constituted under § 515(a). United States v. Crispino, supra, n. 41.

Finally, some of the courts upholding the authority of special attorneys have done so after finding that the special attorneys had in fact been "specifically directed" by means of internal Justice Department memoranda and guidelines and that they operated with the agreement and under the direction of the United States attorneys. United States v. DiGirlomo, supra; United States v. Weiner, supra; Sandello v. Curran, supra; United States v. Brown, supra. At oral argument in this case, the Government admitted that there were unpublished guidelines and memoranda dealing with the relationship among the Justice Department, special attorneys, and United States Attorneys. The Government indicated, however, that it did not wish to rely on these memoranda and guidelines as evidence of compliance with the requirements of § 515(a), and it has not, therefore, furnished the Court with any of these documents. In light of this, no speculation will be attempted concerning whether unpublished memoranda and guidelines did in fact give the special attorneys more specific direction than that contained in the appointment letter set out above.

■ The conclusion evident from the legislative history of § 515(a) is that Congress intended to grant the Attorney General power to supersede the United States attorneys' responsibilities for presenting cases to grand juries only where a case or a specific area of law enforcement was of such special importance that a specially qualified attorney was desirable. This limitation of the Attorney General's power under § 515(a) was acquiesced in for decades, as the appointment letters specified the types of cases which the special attorneys were to conduct. The fact that § 515(a)'s requirement that the special attorneys be "specifically directed by the Attorney General" remains valid is evident from the recent cases discussed above. It is necessary, therefore, to examine Mr. Ward's appointment letter to judge whether it complies with the requirement of § 515(a) which has been identified.

## 1270

### V.

The first paragraph of Mr. Ward's appointment letter provides as follows:

"The Department is informed that there have occurred and are occurring in the Eastern District of Wisconsin and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time."

The second paragraph appoints Mr. Ward a special attorney to assist in the trial of and conduct proceedings in the "aforesaid cases." The only reasonable meaning which can be ascribed to the "aforesaid cases" is that it refers to the cases identified in the first paragraph. But all the first paragraph states is that the cases are ones involving "violations of federal criminal statutes." There is no attempt to specify the particular statutes which Mr. Ward is to enforce or the types of cases which he is to present to grand juries. There is no attempt to specify what makes these cases of such "particular importance" that a "specially or particularly qualified" attorney is necessary. This letter actually directs Mr. Ward to enter into the Eastern District of Wisconsin "and other judicial districts of the United States" and conduct grand jury proceedings with regard to *any* cases involving the violation of *any* federal criminal statute by *any* person. In other words, he is authorized to replace the United States attorney in the investigation and prosecution of the criminal laws of the United States.

The statement by Judge Werker in United States v. Crispino, supra, is applicable here:

"The commission letter * * * is a bold assertion of authority by the Attorney General to appoint special attorneys in any case regardless of its importance and regardless of whether any particular skill or knowledge is required. If upheld it would allow these special attorneys to supersede the local United States Attorneys and their regular assistants, whose statutory duty for the last 186 years has been to prosecute all offenses against the United States in their districts, in any cases involving a violation of a 'federal criminal statute.' Congress never intended to give such a broad authority when it passed the Act of 1906 * * *." 392 F.Supp. at 779.

The roving commission granted to Mr. Ward by the appointment letter does not comply with the requirement of § 515(a) that he be "specifically directed by the Attorney General."

Since Mr. Ward was not lawfully authorized to appear before the grand jury, his unauthorized presence requires a dismissal of the indictment.[11] Rule 6(d), F.R.Cr.P.; United States v. Daneals, 370 F.Supp. 1289 (W.D.N.Y. 1974); United States v. Isaacs, 347 F. Supp. 743 (N.D.Ill.1972); United States v. Bowdach, 324 F.Supp. 123 (S.D.Fla. 1971); United States v. Carper, 116 F. Supp. 817 (D.D.C.1953); United States v. Edgerton, 80 F. 374 (D.Mont.1897).

It is therefore ordered that the indictment in the above-entitled case is dismissed.

11. Since the indictment is dismissed by this decision and order, there is no need to rule on defendants' additional contention that evidence obtained pursuant to a wiretap was illegally seized on the ground that Mr. Ward was not an "investigative or law enforcement officer" as defined in 18 U.S.C. § 2510(7) when he applied for the order.